JAMES A. BARKER v. JOHN POPE and others.

*Evidence upon question of sanity—Hearsay.*

1. The declarations and opinions of persons not witnesses are incompetent evidence upon the question of one's capacity to make a deed; *Hence* the question—have you ever heard any one say that the grantor was wanting in capacity?—was properly ruled out.

2. But the opinion of a witness founded on actual observation and personal knowledge of the state of the grantor's mind, is admissible.

3. Hearsay evidence and its incompetency to establish a fact, discussed by ASHE, J.

(*Clary* v. *Clary*, 2 Ired., 78; *Rowland* v. *Rowland, Ib.*, 61, cited and approved.)

EJECTMENT tried at July Special Term, 1884, of RANDOLPH Superior Court, before *Graves, J.*

The plaintiff claims the land under a sale made by James A. Barker, as administrator of James Barker, deceased, of lands claimed to have belonged to James Barker, deceased, at his death, to raise assets to pay the intestate's debts.

It was agreed that James Barker died January 2d, 1868, and said sale was made about the year 1878, and the land in controversy purchased at said sale by one Foust, who paid the purchase money and took a deed from J. A. Barker, administrator, for said land, and thereafter sold and conveyed the same to the plaintiff, before the commencement of this action.

The defendants claim title under deeds executed and delivered by said James Barker deceased, to John Pope, on the 25th day of June, 1857, and the defendants in this action are the heirs-at-law of said John Pope and others deriving title from him, the said John Pope having died since the commencement of this action. The issues were as follows :

1. Did James Barker, at the date of his alleged deed to John Pope, of the 25th of June, 1857, have mental capacity to execute said deed ?

2. Is the deed by which plaintiff claims title valid and sufficient to place title in plaintiff ?

During the progress of the trial there was much conflicting evidence given in regard to the capacity of the said James Barker, on the said 25th day of June, 1857.

The defendants introduced one Neri Cox, who testified " that he had known the said James Barker for twenty years previous to his death in January, 1868 : had lived in his immediate neighborhood, and that in his opinion, he had capacity in 1857 to make a deed."

The defendants then proposed to ask witness if he had ever heard anything said of the want of capacity of James Barker during his life. Objected to by plaintiff. Objection sustained and defendants excepted.

On the reply the plaintiff introduced one Parks, who testified " that he had known James Barker for many years before his death, and lived in his immediate neighborhood ; that he had known him to make small business transactions but that in his opinion he did not have capacity in 1857 to make a deed."

On cross-examination defendants proposed to ask witness if he had ever heard the capacity of James Barker called in question before this action was begun. Objected to by plaintiff. Objection sustained and defendants excepted.

Verdict for plaintiff; judgment ; appeal by defendants.

*Messrs. J. T. Morehead* and *Scott & Caldwell*, for plaintiff.
*Mr. M. S. Robins*, for defendant.

ASHE, J. Both parties claimed under James Barker. The defendants, as heirs-at-law of John Pope, claimed under a deed made by Barker to Pope in the year 1857. The plaintiff insists that James Barker, at the time of executing the deed to John Pope, did not have capacity to make a deed.

The defendants, in the course of the trial, introduced one Cox who testified that he had known Barker for twenty year previous to his death in 1868; had lived in his immediate neighborhood ; and that, in his opinion, he had capacity in 1857 to make a deed. The defendants then pro-

posed to ask the witness, *if he had ever heard anything said of the want of capacity of James Barker during his life.* To this, the plaintiff objected, the objection was sustained and the defendants excepted.

One Parks was then introduced, by the plaintiff, who testified that, though he had known Barker to make small business transactions, in his opinion he did not have capacity in 1857 to make a deed; and on cross-examination the defendants proposed to ask the witness, *if he had ever heard the capacity of James Barker called in question before this action was begun.* The plaintiff objected to the answer of this question, and the objection was sustained, and this is the defendants' second exception.

The first question proposed was offered with the view of supporting the testimony of Cox, and the latter, to weaken the testimony of Parks, the plaintiff's witness. The two questions, however, are substantially the same, and by interpretation mean—Have you ever heard any one say that James Barker was wanting in capacity? If such a question were admissible, the answer of the question—Have you ever heard any one say that he had capacity—would be equally admissible; and that would raise an inquiry into the state of Barker's mind, founded upon the declarations and opinions of persons who were not witnesses in the case.

Prior to the case of *Clary* v. *Clary*, 2 Ired., 78, it had never been held in this state that any other than an attesting witness to a will could give his opinion upon the question of sanity; but in that case it was held that, not only the subscribing witness to a deed, but any other witness who had opportunity of acquiring personal knowledge of the state of the grantor's mind might give his opinion upon the subject, because his opinion is founded upon actual observation. The reason why the attesting witnesses to a will were permitted to express an opinion upon the testator's capacity was, because it was their business to inspect and judge of

the testator's sanity before they attested, and the law presumes that they did observe and judge of it. And it was said in that case, that if observation is presumed to be a sufficient ground for receiving in evidence the judgment of a witness, "we cannot conceive why the judgment of any witness actually founded upon such observation shall not be received in evidence."

This is as far as the rule has been extended. What persons who are not parties to the suit may say, or what opinions persons not witnesses may express in regard to the sanity or insanity of a testator or grantor, has never been allowed, because it is hearsay.

Mr. TAYLOR, in his work on Evidence, lays down the rule to be, that the extra-judicial statements of third persons cannot be proved as hearsay, unless such statements were part of the *res gestæ;* or made by deceased persons in the course of business; or as admissions against their own interest, § 175. And again he says, a fact of interest to a whole community may be thus established, but it is otherwise as to statements concerning facts as to which the community would be likely not to be impressed. § 185.

In *Rowland* v. *Rowland,* 2 Ired., 61, the defendant offered in evidence a bill of sale for a slave from his mother (the plaintiff's intestate) to himself. The plaintiff contended that the intestate, at the time of executing the deed, was *non compos mentis,* and on the trial offered to prove the declarations of one Cagle, who had married the grand-daughter of the intestate, and who had obtained from her a bill of sale for four other slaves, which deed bore even date with that executed to the defendant, but the evidence was rejected by the court below, and the ruling was sustained here.

In *Mima Queen* v. *Hepburn,* 7 Cranch, 290, Chief Justice MARSHALL held the principle to be, that hearsay evidence is incompetent to establish any specific fact in its nature

susceptible of being proved by witnesses who speak from their own knowledge. It is a rule of evidence that "hearsay" is in its own nature inadmissible. That this species of testimony supposes some better testimony which might be adduced in the particular case is not the sole ground of its exclusion. Its intrinsic weakness, its incompetence to satisfy the mind of the existence of the fact, and the fraud that might be practiced under its cover, combine to support the rule that "hearsay" evidence is totally inadmissible.

Bearing on the same point is the decision of the court in *Robbins* v. *Treadaway*, 2 J. J. Marshall, 540, (court of appeals of Kentucky). It was an action on the case for a libel alleged to have been published by the defendant against the plaintiff as a circuit judge, and the capacity of the judge came in question. In the court below, to prove incapacity, the defendant was permitted to ask witnesses the opinions of persons who were not witnesses. This was held to be error, and the judgment of the court below was reversed. The court say: "The capacity of the judge must be ascertained by the opinions of intelligent witnesses. It is not allowable to prove the opinions of men who are not sworn, *or even public opinion.*"

There is no error. The judgment of the court below is affirmed.

No error.                                    Affirmed.