PETER McRAE, Adm'r, v. CHARLES MALLOY.

*Evidence—Exception— Witness— Opinion—Surprise.*

In an action brought by an administrator to enforce a contract made with his intestate by the defendant, wherein the latter alleged that the execution thereof had been procured by surprise, undue influence, &c.; *It was held,* 1. The defendant was competent to testify to the condition of his mind and the circumstances surrounding him at the time of his execution of the agreement; 2. Declarations made by the defendant shortly after the execution of the contract, were competent as showing the condition of his mind and in corroboration of his evidence on the trial; 3. A witness attacked may himself be examined as to the corroborating statements; 4. The opinion of a witness—though not an "expert,"—founded upon observation of the character of a person, is competent evidence of the condition of the mind of that person; 5. Exceptions to the admissibility of evidence must specifically point out the objectionable matter—a general exception embracing competent and incompetent testimony will not be entertained; 6. If a witness on the cross-examination, in reply to a legitimate inquiry, makes a statement of incompetent matter, the proper course is to apply to the trial Judge to have it withdrawn, or to direct the jury to disregard it. Otherwise, it will not be treated as a valid ground of exception on appeal; 7. To entitle a party to relief on the ground of surprise, the circumstances must be such as demonstrate that he

had no opportunity for suitable deliberation or consultation, and that in consequence thereof he was influenced to act in a hasty and improvident manner.

(*Barnhardt* v. *Smith*, 86 N. C., 473; *Bost* v. *Bost*, 87 N. C., 477; *Lockhart* v. *Bell*, 90 N. C., 504; *State* v. *George*, 8 Ired., 324; *Clary* v. *Clary*, 3 Ired., 78; *Barker* v. *Pope*, 91 N. C., 165; *Horah* v. *Knox*, 483, cited and approved, and *Woodhouse* v. *Simmons*, 73 N. C., 70, cited and distinguished).

This was a CIVIL ACTION tried before *MacRae, Judge,* at Special Term, 1885, of RICHMOND Superior Court.

There was judgment for the defendant, from which the plaintiff appealed.

The defendant, who had been guardian to Alexander Malloy during his minority, and held a large trust estate in his hands, some years after his ward arrived at full age executed to him the following instrument in writing and under seal:

STATE OF NORTH CAROLINA, }
　　Richmond County.　　　 }

For and in consideration of paying and discharging the balance due Alexander Malloy, of whom I was guardian, I do hereby promise and agree to pay to said Malloy annually, one third of the net profits to be made at the factory of Malloy & Morgan during my life.　　　　　　C. MALLOY. [Seal].
　8th March, 1878.

The present action was commenced by the plaintiffs, the administrator of said Alexander Malloy and his heirs-at-law, by the issue of a summons against the defendant, returnable to Spring Term, 1879, of the Superior Court of Richmond, to enforce said covenant, and to have an account taken of the operations of the factory during the next ensuing year, to the end that the share due the intestate be ascertained and recovered.

The defendant put in his answer at the same term, and afterwards an amended answer, setting up, among other defences not material in determining the present appeal, that the covenant or contract was obtained from him by surprise and undue influence.

Two issues only were submitted to the jury, which, with the responses to each, are:

I. Was the contract sued upon obtained by surprise or undue influence?   Yes, by surprise.

II. Was defendant induced to execute said contract by false representations made by intestate or his attorneys?   No.

The plaintiffs demanded judgment upon the finding under the second issue, insisting that they were entitled thereto, notwithstanding the finding upon the first, which was refused, and judgment being rendered upon the verdict for the defendant, they appealed.

*Mr. Frank McNeill* and *Messrs. Reade, Busbee & Busbee*, for the plaintiff.

*Messrs. Burwell & Walker*, for the defendant.

SMITH, C. J. (after stating the facts).   The exceptions to be considered are to the rulings of the Court upon questions of evidence, to the refusal of instructions asked, and to such as were given to the jury.

The execution of the contract being admitted and the burden in impeaching its validity thus devolving on the defendant, he was first examined as a witness on his own behalf, and testified in regard to the circumstances attending the making of the contract thus:

The contract was signed at Alex. Malloy's house—Messrs. Shaw, McNeill, Morgan and myself being present.   Messrs. Shaw and McNeill are lawyers and were Alex. Malloy's attorneys, not mine.   It was about 12 o'clock.   I live three-fourths of a mile from the house; I got there about 8 o'clock—after breakfast; I was not notified before that day that the transaction was to occur and had no knowledge of it.

The plaintiffs here interposed an objection which was disallowed, and they excepted.

The objection is in a very general form and it does not appear to how much and what portions of the preceding testimony it is intended to apply. If all are embraced and some portions are competent while others are not, the exception is too broad to be sustained. As was said in *Barnhardt* v. *Smith*, 86 N. C., 473, " it is not erroneous to refuse to rule out a volume of testimony when a portion of it ought to be received, and therefore the statutory rule of practice prevails which requires that the obnoxious evidence shall be specially pointed out and brought to the notice of the Court in order to a direct ruling on its exceptions," &c. The same principle is recognized in regard to the Judge's instructions before the change in The Code since introduced. §412, par. 3. *Bost* v. *Bost*, 87 N. C., 477.

If the exception was intended to be restricted to the concluding sentence, the absence of information of what was about to take place—it does not fall under the condemnation of §590 of The Code.

It may include the intestate, but it is of much wider scope and takes in every possible source from which information might come, and thus encounters the very same difficulty already adverted to.

The preliminary question was first to be determined by the Judge, that the evidence involved a negation of what may have been said by the intestate, and then the testimony would have been confined to the want of information from others. *Lockhart* v. *Bell*, 90 N. C., 504.

The case is not like that of *Woodhouse* v. *Simmons*, 73 N. C., 70, since there the living party was not permitted, after the statutory presumption of payment had arisen, to repel it by proving that, in fact, the note had not been paid. This necessarily related to an inter-communication between the parties and was ruled out, as within the inhibitions of the statute, since it was possible the deceased might sustain the presumption by proving an actual payment of the debt.

II. The second objection to the detailed account of the loss of trust funds by the burning of his house by the invading armies under Sherman—of his inability to collect the notes, solvent when taken and rendered worthless by the destruction of the property of the debtors—his seeking and acting under advice of counsel—and his delivery of what funds he still held to the plaintiff—must be disposed of in the same way as the preceding exception. The objection is not pointed to any portion of the testimony, nor do we discover any against which, if so directed, it would be available.

III. The plaintiff objects also to the witness saying "I was very much excited when I signed the paper"; "I felt very much depressed"; "I would not have signed it, if I had had proper time for reflection." These were facts capable of proof by others, and must be equally provable by the plaintiff. They indicated the state of mind of the witness when he signed the contract, and his repugnance to the act. The inquiry is, whether the instrument was procured by surprise and pressure which could scarcely be resisted, and is explanatory of the act of execution.

IV. The plaintiff further excepts to the witness being allowed to say—"An hour or two afterwards," on the road home, "I expressed to Mr. Morgan my regret that I had signed it"—"I told him I was forced to sign it or I would have to sign it," just before its execution;—"I considered I did not owe Alexander Malloy a cent."

These are indications of the state of mind just before and after the signing, as he says it was at the time of doing the act—and are corroborative of his testimony in this particular. Concurrent declarations are competent to support as well as to contradict, and these may be shown by an impeached witness, as this witness is by his very relation to the cause and controversy, as well as by others who heard them. *State* v. *George*, 8 Ired., 324.

The witness was certainly competent to say that he did not consider that upon a just settlement of the trust estate, he would be

found indebted to his ward, for this is the obvious meaning of the declaration, based upon the destruction of funds in his hands which he could not by any rule of fiduciary diligence prevent. But it is a harmless estimate, perhaps an erroneous one, not calculated, so far as we can see, to prejudice the plaintiff's case.

V. The next exception is to testimony delivered on cross-examination not responsive to the question "what became of the notes you saved?"

The witness, after a brief recital of his efforts to preserve the trust funds and their seizure by the Federal soldiers, says, "What they did not get I gave to Alex. Malloy."

The witness was not stopped in giving his narrative—nor until he had said what is now the subject of exception. The concluding words are in direct response. The plaintiff, if opposed to the giving in of the testimony, should have interposed and arrested the examination, or if this could not be done in time, should have asked the Judge to require its withdrawal or to direct the jury to disregard it, so that it would become harmless.

But it is not admissible for counsel to be quiet and allow the evidence to come out and take advantage of it, if favorable, and if not, to ask that it be stricken out and not considered. It is not subject to exception as is testimony in itself incompetent and not extracted upon examination of the witness by the complaining party.

VI. The next and remaining exception to evidence received (unless some have been inadvertently overlooked) is to a portion of that of the witness Morgan, wherein he says: "I didn't consider him in a condition of mind to transact business—that sort of business." "I didn't consider him at that time in condition or state of mind to act as he would have done if he had had time to reflect about it,—not at that time."

And further, the plaintiff excepts to the witness testifying to what the defendant said to him on their way home, substantially the same as the defendant's testimony already considered.

The objections to the clauses we have extracted from the tes-

timony seem to rest upon the ground that these expressions of opinion of the defendant's state of mind and capacity to transact business are not receivable upon the present inquiry.

We do not acquiesce in this view of the law. The opinion is but a condensed and summary method of stating the result of personal observations and communications with the party, and its competency is recognized in an able opinion of Judge GASTON in *Clary* v. *Clary*, 3 Ired., 78, in which, after an elaborate discussion of the subject, he says: "Mere opinion as such is not admissible. But when it is shown that the witness has had an opportunity of observing the character of the person or the handwriting which is sought to be identified, then his judgment or belief *formed upon such observations,* is evidence for the consideration of the jury; and it is for them to give to this evidence that weight which the intelligence of the witness, his means of observation, and all the other circumstances attending his testimony, may in their judgments deserve." In this case the testimony of a witness whose deposition had been taken—"but deponent was impressed with the belief that as to her mental faculties, she was in that state called childish"—was held to be competent. The same ruling is made in the late case of *Barker* v. *Pope*, 91 N. C., 165, and recognized in *Horah* v. *Knox*, 87 N. C., 483, though the point was not brought up by appeal to this Court.

Upon the conclusion of the evidence, the plaintiff asked for the following instructions:

1st. That there is no evidence that the contract sued on was obtained by surprise or undue influence as alleged in the answer.

2nd. That there is no evidence that the defendant was induced to execute the contract sued on by reason of the representations stated in the defendant's answer.

3d. That if said representations were made there was no evidence they were false.

4th. That if the contract sued on was given by defendant as compromise of doubtful rights between Alex. Malloy and defendant, neither party knowing their full rights, and even if it

was afterwards ascertained that Charles Malloy was not indebted as much as he supposed, this would not affect the contract and cast suspicion on its integrity.

5th. That even if Charles Malloy, guardian of Alex. Malloy, took notes which at the close of the war he thought solvent, this would not relieve him from liability to his ward, Alex. Malloy, unless he took surety to said notes, who were solvent at the time the notes were taken.

His Honor gave the second and third instructions as prayed for, and declined to give the first, fourth and fifth, and proceeded to charge the jury as follows:

"The plaintiffs seek to enforce the performance of a contract alleged to have been made by the defendant with Alex. Malloy, now deceased. The signing and delivering of the contract is admitted, but defendant says that it was obtained from him by surprise and undue influence, and that it was obtained from him by the use of false representations of the attorneys for Alexander Malloy who were present at the execution of the contract. There are other questions involved in this action, but for the present purpose nothing is presented to you but these two issues:

"'Was the contract obtained by surprise?' Was there such conduct on the part of Alex. Malloy and his attorneys, or either of them towards the defendant Chas. Malloy, as so surprised him and took away from him his own volition, and took him unawares and confused him, and so enabled them to procure from him the execution of the contract, not of his own free will, but because his will was overpowered by their will, and so the deed, or contract as it is called, was not his contract, not his deed, but in reality the act of those so operating upon him.

"'Was he of sound mind?' Not was he of very strong mind nor of very weak mind, but did he know what he was doing, and did he have capacity to act for himself; or were the circumstances such, that for the time being he lost his right mind and reason, and could not act for himself; if such was his condition, produced by the surrounding circumstances, such circumstances

11

of distress as to entirely overcome his free agency, you will be justified in responding to the first issue, 'Yes, by surprise.

"The burden is upon the defendant to satisfy you of this, by the preponderance of evidence, and the evidence to satisfy you of the truth of this defence should be clear and convincing.

"As to the question as to whether it was obtained by reason·of undue influence, this undue influence is an overpowering and controlling influence, exercised by one occupying a confidential relation to another, one who occupied the position of the stronger over the weaker, or some confidential relation which enables him to exert an influence arising from such relation, for his own benefit, and there are no circumstances in the testimony which would warrant you in finding that the execution of the contract was obtained by reason of undue influence. While the phrase, 'undue influence' is used, it is more properly a charge of duress, or compulsion, and is embraced in the allegation of surprise, so that you may consider only the allegation of surprise in this issue.

"'Was it obtained by false representations, etc?' The allegation is, and to this you are confined, 'that it was represented to the defendant for the purpose of inducing him to sign the said deed and said contract, that if he did not sign them it would ruin him,' one of the intestate's counsel remarking that on account of the loss of papers destroyed by Sherman's army, and the length of time that had elapsed, it would be difficult for him to exonerate himself from liability to his ward. There is no evidence that the first words were used. It would not warrant you in finding a verdict on this issue in the affirmative."

The exceptions pressed most earnestly on our attention, to the charge and ruling of the Court, are that the allegations of surprise and undue influence, upon the facts stated in the answer, are insufficient to invalidate the contract and relieve the defendant of his assumed undertaking, nor is the restricted finding a warrant for the setting the contract aside.

Recurring to the seventh section of the amended answer, it will be seen under what circumstances it represents the act of

signing the deed and contract to have been brought about; that, without counsel himself, he was told, (we give the substance rather than the words used), that a refusal to execute them would ruin him, one of the plaintiff's counsel suggesting his loss of papers and the difficulty he would experience in the effort to exonerate himself from liability to the plaintiff, and that, in consequence of said *threat* and *representation, he was induced to sign both.*

Such are the averments in the answer, and the evidence indicates great excitement and mental disturbance while the matter was in progress—so great that the plaintiff's intestate, in his version of the occurrence given to his cousin Archibald Malloy, said "he never saw anybody hardly in such a fix, and felt sorry for the defendant." These were certainly matters for the jury to consider in determining the character and effect of the act.

Again, it is objected that the finding that there was a surprise only upon the defendant, cannot be allowed to have the effect of rendering the instrument null and inoperative, and therefore, upon the other findings, the plaintiff ought to have judgment.

There might be some force in this contention if the word "*surprise*" stood unexplained, for *per se* it might not be sufficient to vitiate and avoid the act done. The term is used, however, as a ground for equitable relief, and classed with fraud, undue influence and the like.

The "surprise" which furnishes a reason for the interposition of the court of equity, in the words of Judge Story, "must be accompanied with fraud and circumvention; or at least by such circumstances as demonstrate that the party had no opportunity to use suitable deliberation; or that there was some influence or mismanagement to mislead him. If proper time is not allowed to the party, and he acts improvidently; if he is importunately pressed; if those in whom he places confidence make use of strong persuasions; if he is not fully aware of the consequences, but is suddenly drawn in to act; if he is not permitted to consult disinterested friends, or counsel, before he is called upon to act in circumstances of sudden emergency, or unexpected right

or acquisition. In these and many like cases, if there has been great inequality in the bargains, courts of equity will assist the party upon the ground of fraud, imposition or unconscionable advantage." 1 Story Eq. Jur., §251.

The charge of the Court as to what is meant by surprise, to which part of the issue he directed and confined the attention of the jury, is certainly not unfavorable to the plaintiffs, for he describes it as taking away the defendant's volition—over-powering his will, so that the contract was not his, but the act of those coöperating upon him. In this sense of the word, the jury are directed to inquire if the instrument was procured from the defendant by *surprise*, and the verdict responds that it was thus procured.

There are very many forms of exception taken by the plaintiff, but the substance of them all is comprised in the propositions we have considered, and they do not require further comment. Our conclusion, therefore, upon a full and careful examination of the record is that there is no error in the rulings. The judgment must be affirmed.

No error.                                        Affirmed.