F. H. WHITAKER, Administrator of E. L. Davis, v. J. C. HAMILTON, Administrator of Sarah Davis *et al.*

(Decided May 1, 1900.)

*Opinion of Witnesses as Evidence—General Rule—Exceptions, Opinion of Experts; Opinions on Questions of Identity; Opinions Received from Necessity—As to Mental Capacity.*

1. The general rule is, that facts and not opinions are heard by judicial tribunals.

2. The exceptions to the general rule embraces (1) opinion of experts, (2) opinions on questions of identity, (3) opinions received from necessity.

3. The last class includes opinions, founded upon opportunities of observation and knowledge, as to mental capacity to make a contract. *Clary v. Clary,* 24 N. C., 78.

4. A mind capable of making a contract is one that had sufficient intelligence to understand what the person was doing, what property he was disposing of and to whom he was conveying it, and who are excluded by the contract or conveyance.

CIVIL ACTION for possession of personal property, household and kitchen furniture, notes and money, tried before

*McNeill, J.,* at August Term, 1899, of UNION Superior Court.

This action was consolidated with another action between the same plaintiff as administrator, and same defendants in their individual rights relating to the same property, and were tried together.

The property had belonged to Sarah L. Davis, wife of E. L. Davis, and was her's at her death on April 8, 1896.

On April 13, 1896, E. L. Davis executed a written contract of conveyance of said property to the defendants, relations of his wife, and also a renunciation of his right to qualify as administrator upon his wife's estate. E. L. Davis was an old man, aged 84 years, and in bad health, and died in June, 1896.

The allegation on the part of the plaintiff, his administrator, was that the said contract of conveyance was obtained from him by the defendants through fraud and undue influence, and that he was mentally incompetent to make a contract.

The allegation on the part of the defendants was that the contract was fairly made in pursuance of a promise made to his wife at their marriage in 1873, and at her repeated and urgent solicitation since, and that he was mentally competent and understood the effect of the paper-writing.

There were two issues submitted to the jury:

(1) As to the mental capacity of E. L. Davis to make the contract. Answer. "No."

(2) As to fraud or undue influence. Answer. "Yes, undue influence."

Upon the issue as to mental capacity, J. D. Griffin, witness for plaintiff, testified that he had known E. L. Davis fifty-five or sixty years, and frequently interchanged visits with him; was at the house when Mrs. Davis died, and conversed with

him about a week prior to the date of the contract and visited him a week or ten days afterwards; that he had opportunities of forming an opinion of the mental condition of E. L. Davis at the time of the making of the contract, and had formed an opinion.   Being asked what that opinion was, defendant objected; objection overruled.   The witness stated, "I do not think he was capable of making a contract or disposing of his property after his wife's death."   Defendant excepted.

There were a number of other witnesses for the plaintiff who, over objection and exception, testified to the same effect.

His Honor's charge upon the issue of mental capacity, excepted to by the defendant, is adverted to in the opinion.

Upon the verdict of the jury his Honor adjudged that the contract of conveyance executed by E. L. Davis, referred to in the pleadings, was null and void, and a reference was ordered to ascertain and report the description and value of the articles obtained by the defendants under said contract, with directions to report at the next term.

Defendants excepted and appealed.

*Messrs. R. B. Redwine,* and *Burwell, Walker & Cansler,* for appellants.

*Messrs. Adams & Jerome,* and *Armfield & Williams,* for appellee.

FAIRCLOTH, C. J.   This is an action by the plaintiff, as administrator of E. L. Davis, against the defendant as administrator of Sarah L. Davis, to recover money, notes and personal property.

The material facts are these:   The said Sarah L. was the wife of said E. L. Davis, and was the owner of the property sought to be recovered in this action at the time of her death, about April 8, 1896, leaving her husband surviving, who died

intestate in June, 1896. By deed, dated April 13, 1896, said
E. L. Davis sold and conveyed to defendant J. C. Hamilton,
and other defendants, all his right, title and interest as hus-
band of said wife, in and to all of such property owned by
her at her death or during coverture, with authority to take
possession, and renounced his right to administer on his wife's
estate. The defendant administrator took and holds posses-
sion of said property. Plaintiff demands possession and an
accounting by the defendant. It is not disputed that the
husband became the owner of said property as provided in
The Code, 1479.

The plaintiff alleges that at the time of said deed and sale,
the husband was mentally incapable of making a contract, and
that the deed was obtained by undue influence by the defend-
ants, and is void. This is the principal matter in contro-
versy. Several witnesses were examined on that question.

1st issue: "At the time of the execution of the contract,
set out in the pleadings, whereby E. L. Davis purported to
convey to J. C. Hamilton and others the property therein
described, did the said E. L. Davis have sufficient mind to
know what he was doing and to understand the nature of the
contract he was making?" The jury answered, "No."

2nd issue: "Was the execution of said contract procured
by fraud or undue influence on the part of J. C. Hamilton or
any of the other grantees or donees named in the contract?"
The jury answered, "Yes."

During the trial the plaintiff called J. D. Griffin, who tes-
tified:

"I have known E. L. Davis fifty-five or sixty years, have
lived about six miles from him for the last several years; fre-
quent visits were exchanged between us. I visited him dur-
ing his last sickness, and was there the day his wife was
buried, and assisted him to get to her grave, which was about

one week prior to the date of the contract mentioned in the complaint, and I talked with him for some time.   I also visited him a week or ten days after the contract was executed. I have had opportunities of forming an opinion of the mental condition of E. L. Davis at the time of the making of the contract, and I have formed an opinion."   Here the plaintiff asked this question: "From your observation, conversation and association with E. L. Davis, what, in your opinion, was his mental capacity with reference to making contracts or disposing of his property after his wife's death?"   The defendant's objection was overruled, and they excepted.   The witness proceeded: "I do not think he was capable of making a contract or disposing of his property after his wife's death. Mr. Davis was 84 years of age, and was very greatly grieved at his wife's death.   Two or three weeks after her death he asked me what day of the week it was, and said he could not recollect anything; he did not have anything to do with his business, but left it all to his wife.   His mind was such that he could have been easily influenced to make a contract to his own injury."   The witness further said that he did not think that Davis was insane, but he was not competent to manage his affairs, and Davis said so.   He could not recollect recent events as well as matters several years back.

The exception is that the *opinion* of the witness was incompetent.   All the authorities agree to the general rule that the triers of the matter in dispute—the Judge or the jury as the case may be—form their conclusions from the facts before them, and not upon the opinions of others, and that facts and not opinions are heard by judicial tribunals.   The same authorities agree that there are some exceptions to this general rule.   These exceptions are divided into three general classes.   1. Opinions of experts.   2. Opinions on questions of identity.   3. Opinions received from necessity.

In the third class there are several sub-divisions, according to Lawson on Expert and Opinion Evidence. On page 476 (Sub-Rule 4), he says: "One not an expert may give an opinion, founded upon observation, that a certain person is sane or insane." The exception was first adopted in the English courts, and our courts soon recognized the necessity of permitting anyone, whose acquaintance and means of observation of the party whose sanity is in dispute were sufficient, to express his opinion as to his mental condition.

This exception to the general rule has been received in all the States of the Union except Massachusetts, Maine, New Hampshire and Texas.

This question was first presented to this Court in 1841, in *Clary v. Clary,* 24 N. C., 78 (2 Iredell Rep.), in which it was held that "A witness, who has had opportunities of knowing and observing a person whose sanity is impeached, may not only depose to the facts he knows, but may also give his opinion or belief as to his sanity or insanity." In this case Gaston, J., wrote a lengthy and interesting opinion, treating the question in its manifold aspects with clear reasoning. He says: "But judgment founded on actual observation of the capacity, disposition, temper, character, peculiarities of habit, form, features or handwriting of others, is more than mere opinion. It approaches to knowledge, and is *knowledge* so far as the imperfection of human nature will permit knowledge of these things to be acquired, and the result thus acquired should be communicated to the jury because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by the observations of others."

This leading case has not been disturbed by any of our predecessors, but has been frequently affirmed and recognized, notably in *McLeary v. Norment,* 84 N. C., 235; *State v.*

*Ketchey,* 70 N. C., 621; *Barker v. Pope,* 91 N. C., 165; *McRae v. Malloy,* 93 N. C., 160. See also 1 Greenleaf on Evidence, sec. 441.

*Smith v. Smith,* 117 N. C., 326, was relied on by defendant as establishing the contrary doctrine. The mere reading the facts therein will show that the case is in nowise in conflict with *Clary v. Clary, supra,* and in fact it expressly recognizes the same principle. The exception was therefore properly overruled. Several other witnesses were examined on the same question as J. D. Griffin, with some exceptions. They were all properly overruled on the same ground as defendant's second exception.

The Court, at plaintiff's request, gave the jury several special instructions, all of which were assigned by defendant as errors. The instruction, in substance, was that a mind capable of making a contract was one that had sufficient intelligence to understand what he was doing, what property he was disposing of and to whom he was conveying it, and the capacity to know who are excluded by the contract or conveyance. Whilst the definition is in general terms we do not see anything in it prejudicial to the defendant. The other instructions were a recital of several parts of the evidence, and that if they believed the evidence to be true, they would be justified in finding that E. L. Davis did not have sufficient mind to make the contract. The language of these instructions is general, but we do not find any error calculated to mislead the jury in forming their verdict.

Affirmed.