FLORA C. MOORE, EXECUTRIX OF THE ESTATE OF WILLIAM EDWARD MOORE, DECEASED v. NEW YORK LIFE INSURANCE COMPANY.

(Filed 4 February, 1966.)

1. Pleadings § 24—

    A motion to amend the answer after trial has begun is addressed to the discretion of the trial court, and denial of the motion will not be reviewed in the absence of a showing of abuse of discretion.

2. Appeal and Error § 38—

    An exception not brought forward in the brief is deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**3. Trial §§ 40, 41—**

The issues arise upon the pleadings and the court properly refuses to submit an issue which is without predicate in the pleadings.

**4. Trial § 38—**

Where the pleadings do not put in issue an aspect of the case asserted by a party, such party may not object to the refusal of the trial court to charge the jury with reference thereto.

**5. Insane Persons § 8—**

Contracts of a mentally incompetent are voidable and not void, and he, or after his death his personal representative or heirs, depending upon the nature of the contract, may elect to disaffirm one contract and not to disaffirm another contract even though the contracts be with the same party.

**6. Insurance § 23—**

Upon the death of insured, the right to attack his surrender of a life policy for its cash value devolves upon his personal representative, and the personal representative may elect to attack insured's surrender of the policy on the ground of mental incapacity without questioning his act in changing the beneficiary, even though both were done at or near the same date.

**7. Same—**

When the personal representative elects to attack insured's act in surrendering the policy for its cash value and not his act in changing the beneficiary to his personal representative, her evidence tending to show his mental incapacity at the time of both changes in the contract does not perforce destroy her right to maintain the action, and nonsuit on the ground that her evidence discloses her incapacity to sue is properly denied.

**8. Insurance § 24a; Estoppel § 3—**

Insured changed the beneficiary in the policy on his life from his wife to his estate. The wife as executrix sued on the policy, verified the complaint, and testified as an individual in support of her action. *Held:* The wife recovering judgment in her representative capacity would be estopped from thereafter attacking the change of beneficiary and suing on the policy in her individual capacity.

**9. Evidence § 37—**

A non-expert witness may testify from his observation of a person within a reasonable time before or after the date in question that in the witness' opinion such person did not have mental capacity on that date to know and understand the nature and effect of the act in question.

**10. Evidence § 46—**

A medical expert who has examined a person and diagnosed a disease with which such person was suffering may testify that in his opinion such disease existed a number of days prior to his examination and that such person did not then know and understand the nature of the act in question.

**11. Same—**

Permitting an expert witness to testify that insured's mental status on the date in question was such that he could not understand "legal matters" *held* not prejudicial, although the use of such general terms is not commended.

**12. Trial § 16—**

Where, immediately upon motion to strike an irresponsive question the court, in the presence of the jury, allows the motion, the fact that the court fails to instruct the jury to disregard the answer of the witness will not be held for prejudicial error when the record discloses that the jury must have understood that the answer of the witness was not to be regarded as evidence in the case.

**13. Insane Persons § 8;    Insurance § 23—**

Upon the attack of insured's surrender of his life policy for its cash value, there being evidence that insured had lost his job and was sick and despondent, it is not error to admit testimony to the effect that insured owned property and was not destitute, the testimony being relevant to the question of the rational quality of insured's act in surrendering the policy.

APPEAL by defendant from *May, S.J.,* 8 February 1965 Civil Session of HARNETT.

On or about 13 November 1951, the defendant issued to the plaintiff's testator (hereinafter called Moore) its life insurance policy # 19 336 513, whereby it contracted to pay, subject to the terms thereof, $5,000 upon his death to the named beneficiary, this being the plaintiff, Mrs. Flora C. Moore, wife of the insured, in her individual capacity, with certain alternatives which are immaterial here.

The policy contained the following provision, among others:

"5.  Change of Beneficiary.

"The Insured may, from time to time, change the beneficiary unless otherwise provided herein or by indorsement hereon. * * * Every change of beneficiary must be made by written notice to the Company at its Home Office accompanied by this Policy for indorsement of the change hereon by the Company, and unless so indorsed the change shall not take effect. After such indorsement the change will relate back to and take effect as of the date said written notice of change was signed, whether the Insured be living at the time of such indorsement or not, but without prejudice to the Company on account of any payment made by it before receipt of such written notice at its Home Office."

\*    \*    \*

"7.  Rights of Insured.

"During the lifetime of the Insured and without the consent of the beneficiary, whether revocably or irrevocably, designated, the Insured may receive every benefit, exercise every right and enjoy every privilege conferred upon the Insured by this Policy, * * *."

The policy also contained a "Table of Loan and Non-Forfeiture Values." The "Non-Forfeiture Value" is also referred to in the policy as the "Tabular Cash Value." The policy provides further that in event of default in payment of premium the insured would have certain rights under the "Non-Forfeiture Provisions," including the following:

"(c)   Cash Value within Three Months after Default:—
"At any time within three months after such default, but not later, the Insured may elect in place of such Non-Participating Extended Term Insurance or Participating Paid-up Insurance to surrender this Policy and all claims hereunder and receive its Cash Value as at date of default less any indebtedness hereon. * * *"

Attached to the policy is a printed "Change of Beneficiary" form signed by Moore, dated 23 April 1963, stating that it is to be attached to the policy and that "the 'beneficiary' under the above numbered policy is hereby changed to the executors, administrators or assigns of the insured."

Moore died 17 May 1963. The plaintiff, as executrix of his estate, claiming as beneficiary of the policy pursuant to the above mentioned change of beneficiary, brought this action to recover the amount of insurance provided by the policy. The defendant in its answer alleges that on 24 April 1963 Moore requested the termination of the policy and surrendered it so as to obtain its cash surrender value, in response to which request the Company mailed to Moore its check for such value which was $2,322.43. This check was not cashed. The defendant contends that its liability is for that amount only.

The plaintiff alleges that Moore was mentally incompetent to surrender the policy for its then cash surrender value at the time he undertook to do so. The jury so found. From a judgment that the plaintiff have and recover of the defendant upon the policy, as if Moore had never applied for the payment of the cash surrender value to him, the defendant appeals.

The following is a summary of the material portions of the evidence offered by the plaintiff in addition to the provisions of the policy and proof of the death of Moore on 17 May 1963:

From 27 April to his death, Moore was confined in a hospital in Wilmington. He and his wife had then been separated for approximately six months, but she visited him several times while he was in the hospital. They retained the same post office box in Lillington. While he was hospitalized the defendant's check for the cash surrender value of the policy was delivered to the box and taken therefrom by the plaintiff. She took the check to her counsel and he returned it to the defendant. Moore was then in the hospital and was not rational. (Apparently, he was not informed of the arrival or return of the check.) In the opinion of the plaintiff, Moore did not have sufficient mental capacity on 24 April 1963 to know the nature and effect of his signing a paper purporting to cancel the policy in return for its cash surrender value. He was not his normal self. He had "cracked up."

For some time prior to their separation, and thereafter, Moore drank whisky heavily and, at times, was violent, threatening to kill the plaintiff, their daughter and himself. When the plaintiff saw him in the hospital on 27 April 1963, he appeared to have jaundice and he was very much swollen about the abdomen. His drinking habits had grown progressively worse for 10 years. Following his separation from his wife, the plaintiff, some six months before his death, he lost his job and continued to drink heavily. However, he was not destitute, having $2,500 in the bank and other property.

Witnesses for the plaintiff, who were friends and associates of Moore, testified that on 24 April and thereafter he was sick, "off his rocker," threatening suicide and despondent. He was drinking to such an extent that he was not able to do his job and lost it. He was not "normal and rational during 1963." Tears would come in his eyes and he was mentally wrought up and nervous. In the opinion of each of these witnesses, he did not have sufficient mental capacity on and after 24 April 1963 to know and understand the effect of signing a paper concerning the surrender of his life insurance policy for its cash surrender value.

The doctor who treated Moore in the hospital had never observed him prior to 27 April 1963, at which time he diagnosed Moore's condition as cirrhosis of the liver with severe jaundice. He was acutely ill, nervous and drowsy. He was "moderately disoriented." These conditions, in the opinion of the doctor, could have existed prior to 27 April and possibly did. It was also his opinion that it was unlikely that Moore's mental status was such "that he could understand legal matters for a few days prior to April 27."

Evidence offered by the defendant may be summarized as follows:

Some three weeks prior to 24 April, the date on which he under-

took to surrender the policy, he suggested doing so to the agent of the defendant who tried to dissuade him from that course. Moore then appeared normal. On 24 April he went to the office of the defendant's agent and again stated that he wanted to surrender the policy. The agent again tried to persuade him to continue it but Moore said he did not desire to continue the policy because he did not want his wife to have the proceeds. He knew what he wanted and requested the cash surrender value of the policy. In such a situation, it is the normal procedure for the agent to have the policyholder sign both a request for a change of beneficiary and a request for the cash surrender value of the policy. Both of these forms were so signed by Moore. The first was a request to change the beneficiary to make the policy payable to his estate. The agent dated the change of beneficiary request on 23 April and the request for cash surrender value on 24 April but they were signed simultaneously by Moore. Moore's condition then appeared normal in every respect to the agent, who had known him for many years. In the opinion of the agent, Moore then had sufficient mental capacity to know and understand the effect of signing the document requesting the cash surrender value and termination of the policy, and had not been drinking at the time.

Moore's sister, called as a witness for the defendant, testified that in her opinion when he visited her in January, February and March 1963, he was mentally competent and had sufficient capacity to know and understand the nature and effect of his business affairs. In April she observed that his physical condition had changed for the worse but his mental capacity had not. He visited her on 24 April, at which time he told her he needed money desperately and intended to cash in the insurance policy. In her opinion he had sufficient mental capacity to understand the nature and effect of surrendering the policy.

*Smith, Leach, Anderson & Dorsett by Henry A. Mitchell for defendant appellant.*

*Wilson, Bain & Bowen by Edgar R. Bain for plaintiff appellee.*

LAKE, J. The defendant assigns as errors, among other things, the denial of its motion for judgment as of nonsuit, the refusal to submit to the jury an issue as to whether Moore had sufficient mental capacity to change the beneficiary, and the refusal to instruct the jury that if Moore did not have sufficient mental capacity to surrender the policy he did not have sufficient mental capacity to change the beneficiary. All of these assignments rest upon the same contention, which is that Moore signed the request for change of

beneficiary and the form for the surrender of the policy at the same time so that, if, as the jury has found, he did not have sufficient mental capacity to surrender the policy, neither did he have sufficient mental capacity to change the beneficiary and thus the plaintiff, executrix, as the new beneficiary, cannot maintain this action.

In its answer the defendant admitted that "by the express terms of said insurance contract said change of beneficiary became effective on April 23, 1963." After the trial was in progress and the plaintiff had virtually completed the introduction of her evidence, the defendant moved to amend its answer to assert, as an additional defense, that if Moore was mentally incompetent to surrender the policy he was also mentally incompetent to change the beneficiary. This motion was denied. Its denial was in the discretion of the court. *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391. It may not be reviewed on appeal in the absence of a clear showing of abuse of discretion, which does not appear. Furthermore, while the defendant excepted to the denial of its motion to amend and assigned this ruling as error, the exception is not mentioned in its brief and no argument is made or authority cited with reference to it so it is deemed abandoned. Rule 28.

Issues arise upon the pleadings of the parties and need not be submitted to the jury with reference to matters as to which there is no controversy raised by the pleadings. *Rubber Co. v. Distributors,* 253 N.C. 459, 117 S.E. 2d 479; *Wheeler v. Wheeler,* 239 N.C. 646, 80 S.E. 2d 755. There was, therefore, no error in the refusal of the court to submit an issue to the jury with reference to the validity of the change of beneficiary. There being no such issue before the jury, the denial of the requested instruction with reference thereto was not error.

The defendant argues in its brief that its motion for judgment as of nonsuit should have been allowed because the plaintiff's own evidence shows Moore was mentally incompetent at the time he signed the request for the change of beneficiary. It is the defendant's evidence, not the plaintiff's, which shows that the request for change of beneficiary and the form for surrender of the policy were signed contemporaneously. The plaintiff's evidence, consisting of the policy with the change of beneficiary form attached thereto, indicates that the request for change of beneficiary was signed on 23 April 1963, the day before the form for the surrender of the policy was signed. Nevertheless, the plaintiff's evidence as to the mental condition of Moore can lead to no conclusion other than that his condition was the same on the one day as on the other.

It does not follow that the motion for judgment of nonsuit should have been granted. Even if these two documents were executed con-

temporaneously, as the evidence of the defendant tends to show, they related to two separate and distinct rights of the insured under the policy. When completed, the two transactions were separate and distinct, each capable of standing alone without support from the other. The evidence offered by the defendant indicates that the company, for reasons not disclosed, customarily requests an insured, desiring to surrender his policy, first to change the beneficiary so as to make the policy payable to his estate. The policy, however, does not require this to be done. Under the policy Moore had the right to change the beneficiary without surrendering the policy, and vice versa.

As Denny, J. (now C.J.) said, in *Walker v. McLaurin,* 227 N.C. 53, 40 S.E. 2d 455, "An agreement entered into by a person who is mentally incompetent, but who has not been formally so adjudicated, is voidable and not void." The same is true of the surrender or cancellation of a contract by such person. If he dies without regaining his mental competency, his right to disaffirm his contract passes to his heirs or to his executor, depending upon the subject matter of the contract. *Walker v. McLaurin, supra; Cameron v. Cameron,* 212 N.C. 674, 194 S.E. 102; *Orr v. Mortgage Co.,* 107 Ga. 499, 33 S.E. 708; *Bullard v. Moor,* 158 Mass. 418, 33 N.E. 928; *Verstandig v. Schlaffer,* 296 N.Y. 62, 70 N.E. 2d 15; Williston on Contracts, 3rd Ed., § 253.

The exercise by an insured of his right under the policy to change the beneficiary thereof, effects an amendment of the former contract and is, itself, the making of a contract which is voidable at his option if he then lacks the mental capacity to make it. Similarly, the surrender by such a person of a life insurance policy for its cash value is voidable at his option. Upon his death, without regaining his mental capacity, his right to disaffirm each of these transactions passes to his executor. The executor, like the insured, may disaffirm and set aside both of the transactions, or neither, or he may disaffirm and avoid the cancellation of the policy while leaving the change of beneficiary in effect.

It is not necessary for us now to determine, and we do not determine, what, if any, rights the original beneficiary under the policy may have when the insured, lacking mental capacity, changes the beneficiary. In the present case, the original beneficiary was Mrs. Flora C. Moore, wife of the insured, who now sues, as the executrix of his estate, to enforce the policy pursuant to the change of beneficiary effected by him. It is true that she has sued in her official capacity as executrix. However, she has testified in support of this action as an individual and she verified the complaint. If, as the original beneficiary of the policy, she was entitled, upon the death

of the insured, to attack his act in changing the beneficiary, she has by these acts of her own, subsequent to his death, acquiesced in, ratified and affirmed his change of the beneficiary. The judgment in favor of the plaintiff in this action will be a complete bar to any recovery by her, as an individual, in another action.

Since there has been no disaffirmance of the change of beneficiary by the only person or persons having the right to do so, and there has been a disaffirmance of the surrender and cancellation of the policy, the policy is now valid and effective and is payable to the new beneficiary so designated by the insured in accordance with the terms of the policy. Consequently, the motion for judgment of nonsuit was properly denied.

We have examined the numerous assignments of error with reference to the admissibility of testimony relating to the physical and mental condition of Moore prior to these transactions and during the short interval between their occurrence and his death. The lay witnesses, including his wife, testified to their respective observations of his physical condition, his habits, disposition, appearance and actions shortly before the date on which he undertook to surrender the policy. Although they had separated some six months earlier, his wife testified that she saw him frequently between their separation and his undertaking to surrender the policy. She also visited him in the hospital several times in the short interval thereafter prior to his death. There was no error in permitting these witnesses, each upon the basis of his or her own observation of Moore, to state an opinion that he did not have sufficient mental capacity on 24 April 1963 to know and to understand the nature and effect of signing a paper cancelling his life insurance policy for its cash surrender value. "Anyone who has observed another, or conversed with him, or had dealings with him, and a reasonable opportunity, based thereon, of forming an opinion, satisfactory to himself, as to the mental condition of such person, is permitted to give his opinion in evidence upon the issue of mental capacity, although the witness be not a psychiatrist or expert in mental disorders." *In Re Will of Brown*, 203 N.C. 347, 166 S.E. 72; *State v. Witherspoon*, 210 N.C. 647, 188 S.E. 111; *Harris v. Aycock*, 208 N.C. 523, 181 S.E. 554; *Whitaker v. Hamilton*, 126 N.C. 465, 35 S.E. 815; *Clary v. Clary*, 24 N.C. 78; Stansbury, North Carolina Evidence, § 127. Here, each witness based his or her opinion upon circumstances observed by the witness within a reasonable time before or after the date in question.

Dr. Andrews, stipulated to be a medical expert, testified that he saw Moore for the first time at the hospital in Wilmington, where he examined him on 27 April 1963, just three days after Moore un-

dertook to surrender the policy. He testified concerning Moore's physical condition then so observed by him and, over objection, was permitted to testify that these conditions "could have existed prior to April 27 and possibly did." This was not error. It is a matter of common knowledge that "cirrhosis of the liver with severe jaundice" does not come about over night. In any event, the expression by a medical expert of the opinion that such condition possibly existed prior to the date of his examination is well within the limits of admissible expert opinion testimony.

The doctor was also permitted, over objection, to testify that in his opinion it was unlikely that Moore's "mental status was of such nature that he could understand legal matters for a few days prior to April 27." While the use of such general terms as "legal matters" in testimony of this nature is not to be commended, we do not believe it was prejudicial to the defendant or confusing to the jury in this instance. See: *Beard v. R. R.*, 143 N.C. 136, 55 S.E. 505; Stansbury, North Carolina Evidence, § 127.

The Reverend Frank Grill, pastor of the church of which Moore was a member, testified as to his observations of Moore's habits, conversations, physical condition and general attitude. In response to a question, proper in form, calling for his opinion, based upon his observation and conversation with Moore, as to "whether or not Ed Moore had sufficient mental capacity on April 24 or April 30 to know and comprehend or understand the nature and effect or consequences of signing any paper writing cancelling his life insurance policy with New York Life Insurance Company for the cash surrender value," he answered:

> "It is my opinion the man interpreted that decision as he interpreted a lot of other decisions, and that is, I have somewhat stated, not realizing the consequences, the results, seeing things in their normal perspective, knowing that without this, he has no insurance. I think he was not rational to make that or any decision, and how he drove an auto I don't know. That has been mentioned, but how he was safe on the highway, I don't know."

The defendant's counsel immediately moved to strike the answer on the ground that it was not responsive. The court, in the presence of the jury, promptly ruled, "Motion allowed," but did not instruct the jury to disregard the answer of the witness. The witness then went on to say, "My opinion as to whether he knew, understood and comprehended the nature of signing a paper writing cancelling his insurance with the New York Life is that I don't think he was rational enough to make that decision."

Although the proper procedure, upon allowing a motion to strike an answer not responsive to the question, is for the court immediately to instruct the jury not to consider the answer, we think that the failure to do so in this instance, in view of the court's prompt allowance of the motion to strike, is not prejudicial error. The jury could only have interpreted the ruling of the court as meaning that the answer given by the witness was not to be regarded as evidence in the case.

There was no error in permitting the witness Baggett to testify as to property owned by Moore. It was relevant to the question of his lack of reason to surrender the policy so as to get its cash value for his own use, especially in view of the evidence that he had lost his job and was sick and despondent. It had relation to the question of the reasonableness, that is the rational quality of his act in surrendering the policy.

We have examined the defendant's exceptions to the charge of the court, including the court's repetition of the above mentioned testimony by Dr. Andrews in its summary of the evidence, and find these to be without merit.

No error.