Ruffin, Chief Justice,
after stating the case as above, proceeded as follows: The counsel for the defendants contends, that the Court erred in laying down, in the first part of the instructions, that the deed to 'Dixon, if designed to defraud the creditors of Falls, was void as against purchasers from Falls as well as against his creditors; and it is insisted that it was a prejudice to the defendants to leave the case to the jury upon that erroneous and irrelevant proposition.
•But we think the judgment cannot be reversed on that ground. It is generally true, that deeds void by reason of bad faith, as to creditors, aro also void as to purchasers.— *281 They are not, indeed void as to the purchasers, because they are so as to the creditors, but by reason of the bad faith,which alike vitiates them as against both purchasers and creditors. There may, perhaps, be instances in which purchasers would not stand on the same footing with creditors. If so, this certainly is not a case of the kind; for if the deed be as to the creditors, it is so upon the grounds that the sale to Dixon was merely colourable and in trust for Falls or his J * family, and that the consideration was never to be paid, if we are to judge from the relation of the parties and the distant periods to which the payments were deferred. Now, the same considerations would render the deed . . , , so void as against a subsequent purchaser under the Statute 27th Elizabeth. See. 1 Rev. Stat. Ch. 50, Sec. 2. This is, we think, what his Honor is, in fairness, to be understood 7 J J ixieaa. At all events, the supposed error, if committed in this case, worked no prejudice to the defendants, and therefore furnishes no reason for setting aside the verdict. It could do the defendant no harm, because, clearly, the was here as much void under the 27th Elizabeth against the one class, as it was under the 13th"Elizabeth against the oth’er class of those persons. But furthermore, the defendants did not even contend that the deed was good against purchasers ; but in the instruction prayed by them, expressly admitted it to be void both as to creditors and purchasers, A 7 and relied only on this: — that the lessor of the plaintiff was not such a person as could claim the benefit of the statute for the protection of “purchasers for money or other good consideration” — The defendants cannot therefore comp'ain that the Court accepted their own admission on this point.
^ deeds roid by vea-son of bad creditors,40 asetopuich-' They are not indeed void as «''eso as lo creqit-ors, but by thebadfith "dl.illh aji,ke against asers'a'nd'1" xheremay perhaps be which par-not stalldon*he samelooting with creditors'
But upon the point on which the defence was placed, as just stated, the opinion of the Court is, that the law is for the defendants. Fifty dollars is not such a consideration for conveying an estate worth $25,000, as will defeat a prior voluntary conveyance. It is too palpably and glaringly deficient to amount to a purchase within the Statute 27th Eliza-' beth; and so, we think, the jury ought to.have been told.— They were, on the contrary, instructed that, notwithstanding the price was inadequate and greatly inadequate, they might *282 that the transaction was or was not fraudulent, according ^13 ^ntent °f parties; whether it was or was not merely defeat the previous deed. Without reading the instruc-hypercriticallv, we understand them to be substantial- , ,. . , , that any sum or money constitutes a purchaser under the and that, the inadequacy of the consideration, how-great, will not, of itself, take the case out of the statute the jury shall infer therefrom, as a fact, that the sec-conveyance was a contrivance merely to defeat the first.
In those opinions this Court does not concur. We think there are cases, and that the present is one of them, in which the inadequacy of the consideration alone, is sufficient to condemn the transaction, and strip from it the mask of a purchase; and that the Court ought so to have stated to the jury as a matter of law.
The opinion of his Honor as to the effect of inadequacy of price was, probably, drawn from the doctrine, that an agreement cannot be set aside, as between the parties, merely for that cause. But the reason of that is, that, if one will, without imposition, distress or undue advantage, make a bad bargain with his eyes open, he must stand .to it. His agreement is sufficient, because his interests alone are affected by it.. — . The cases of his creditors, however, or persons claiming under a previous conveyance from him, admit of a very different consideration. They fall within Lord Hahdwxctc’s fourth class of cases in Chesterfield vs Jansen: that of a fraud and imposition on third persons, not parties .to the agreement. To the complaint of such third person it cannot be replied, that he cannot call the consideration petty, and inadequate, because he had assented to it. As against creditors and prior donees, the price must be sufficient in itself to sustain the deed, without the aid of their acceptance; for no such acceptance exists. Then it is to bé enquired, what price will put the statute in operation, or what inadequacy will prevent its operation ? We think that a fair and reasonable price, according to the common mode of dealing between buyers and sellers, was meant by the Legislature; and that at all events, no case is within the statute in which the purchaser cannot with a good conscience claim to hold *283 the estate upon the ground and for the sake of the price paid, and not merely upon the score of the vendor’s agreement; and that the present is not such a case.
¡n the stat-g,?zot technical sense, for one -who act. -it ceivcdmits mea'nhig as denoting for buvT’&iriy? ®°"rse price. •
The term, “purchaser,” is not used in the statute in its technical sense, for one who comes to an estate by his own act. It is to be received in its popular meaning, as denoting who buys for money, and, as we think, buys fairly and course for a fair price. Yery soon after the act of Parliament passed, the case of Upton v Basset. Cro. Eliz. 445, was decided and by Judges, of whom some had assisted in framing , t the Act. It is there laid down that every purchaser ought not to have the benefit of the statute, nor even everyone that pays money, but only those who come to land upon good consideration lawfully, and not without consideration; nor by any indirect means. The case does not leave us at a loss, what we are to understand by the expressions “without consideration” and “indirect means;” for it proceeds diately to exemplify the principle laid down, by giving acase wherein one madea voluntary conveyance, and afterwards another procured him, for £500, or “other petty consideration,” to sell unto him the land, worth £500 per annum; and it was held, that, although he paid money, yet he should not avoid the first conveyance. It is clear that it was then understood, as matter of law, that the act only extended to such purchasers as gave a substantial price, or come in upon other good consideration, as marriage. When the consideration was pecuniary, a “ petty” -sum, when compared with the value of the land — and the amount of a year’s rent was thus denominated — would not help a second over the head of a first conveyance. In Doe v. Routledge, Cowp. 705, the same doctrine is found, yet more distinctly expressed. In that case, it was admitted by the counsel for the plaintiff that'a consideration of five shillings — which he calls colourable or nominal — would be bad; but he contended that £200 could not be deemed colourable only, and as the statute did not require the fidl value, that the sum of £200 was sufficient to place the second surrender before the first, which was purely and entirely voluntary. But the Court held otherwise. Lord Mansfield called the second transaction “ a gross fraud and *284 no purchase at all;” and said that it could not set the former deed aside. Now, why was that no furchase at all? Not for the want of a valuable consideration, if money simply be such a consideration ‘within the statute; for the £200 was actually paid, and there was no circumvention of the settler. It was the inadequacy of price, singly. — a property worth £2000, sold or pretended to be sold for £200: There was nothing else in the case but the disparity of the consideration. The words of Lord Mansfield are, “ the consideration of £200, compared with the real value, shews it to have been no purchase at all, but a gift" To make a purchase within the statute, he declares it must be a bona fide transaction, and <!a fair purchase in the understanding of mankind;” which, from the context, obviously means an honest purchase at a fair frica. Mr. Justice Aston, admitting that the lull value need not be given, says that purchase was by no means fair; and for that relies on the same ground of inadequacy of price, and on that only.
The same rule prevails in equity as at law with regard to purchasers setting aside voluntary or fraudulent conveyances under the stat. 27 E-liz.
The same rule prevails in equity, where what is called a gross inadequacy of price is always fatal to the alleged purchase. This is not on a ground or doctrine peculiar to the Court of Equity, but is founded on the statute as interpreted at law, and for that reason, adopted in equity. In Metcalf v. Pulvertoft, 1 Ves. and Bea. 183, it was insisted that the party was not a good purchaser to defeat a previous gift, because, he gave only one third of the value; and Lord Eldon not only expressed his assent to that proposition, but founded his assent upon the doctrine as established at law, and cited to that purpose the case of Doe v. Routledge.
The principles established by the cases refered to are inconsistent with some of the opinions delivered by his Honor, and shew that at least in refusing the instructions, last prayed for by the defendants, there was error.
It is indeed wonderful, under the instructions given, if understood as favourably for the plaintiff as their terms will ad.mit, that the jury could have found the verdict given in this case. We cannot conceive how any one, at all conversant with the motives and dealings of mankind, could look at this transaction as being any thing else but a gift, under the simu *285 lated appearance, or, rather, the assumed and unmerited name of a sale; or doubt that the price was not the real inducement with Falls, but only to give colour to the transaction. We should suppose that the jury had drawn conclusions from the instructions not contemplated by his Honor, were it not that the verdict was allowed to stand. Thence it is to be presumed, that it was approved by the Court; and if so, then the instructions were, in our opinion, erroneous, not only as they were understood by the jury, but as they were meant to be understood.
Rnd &'t>> íH'G^sncrñl-iy questions ^íereim e & whoseUpí-o-,tlie miljd & this propo-^be '¿rri-^s,°dthgX. of coui-t fnuts nam°torea- or ne-be hare rufef^as for the oluhequesl icy'of1" in a underXe Etra«°f2Ah
*285 We think clearly, that the jury was misdirected, when told that inadequacy of price, of itself, was not in any case fatal to the transaction, as preventing its being-a purchase within the statute; and also that the Court erred in refusing to direct the jury that a “ great inadequacy of consideration” was thus fatal. If the jury had been so advised, the result of their deliberations must have been different from what it was. With the error of the jury, so far as it is exclusively theirs, this Court cannot deal; but so far as it was, or might have been induced by the Court, it is our duty to correct it. In our opinion it ought to have been laid down as the rule of law, that if the consideration was grossly and manifestly inadequate, it was not a good purchase; but that, to constitute such a purchase, good faith and a fair price are requisite.
We go further and say that, in our opinion, the Court might have safely said, and therefore ought to have said, that the plaintiff, in this case, was not a purchaser within the statute. Against such a direction as .this last, it is urged, ten been before, that fraud and good faith are questions ' ® intent, and, therefore, proper for the jury, whose province it is to look into the mind and heart. The correctness of the proposition, ás a general one, is not controverted; but think it is not to be carried to the absurd extreme of cutting off the Court from drawing from admitted facts any ence, however consonant to reason and necessary it may be. We have seen that upon this very question, the Courts both of Law and Equity, have laid down rules, as laws for the parties; and in the same or similar cases it ought again to be done. This very case is an instance of the mischief of *286 at large to the jury a question of this sort, on which to oxteilt at least, and to most, if not all useful purposes, a rule can be propounded as matter of law, applicable unchangeableness to all similar cases. It is no obiec-to this, that no rule can be laid down which will be de-of every case. However much it may perplex the to attempt beforehand to trace the precise line of de-creation between the provinces of the Court aud jury so in every case each body may perform its appropriate yet that ought not to prevent its being- done in any and as far as if is practicable to lay down a rule as that the [aw- 0Ught to be done. At all events, we have no difficulty in excluding this plaintiff from the protection of the statute. The price paid by him will not entitle him- to suPerse|3e a former alienee, on the ground that such former a-paid nothing. If the same thing cannot with strict be said of him, it certainly may, that he paid next to nothing $ and that, in reason and law, is the same thing in respect of those merits around which the statute meant to a safe-guard. This power of the Court is not a novel assumption, nor can it prove practically dangerous orincon-venient. There will be differences of opinion as to the val- , , . . . . . of estates; also opposing evidence as to the price paid or to be paid, and much allowance is to be made for the unwillingness of many men to lay out money unless they get bargain, and likewise for their reluctance to purchase what claimed by another and cannot be got by them without the trouble and expense of litigation. These are all proper con-sideralions to.be left to a jury and to be weighed by them, un- . . . * , . , , proper information at the same time as to the law. We not attempt to enumerate the cases in which the Court should pronounce on the sufficiency of the consideration, nor undertake, in anticipation, to say, how much less than the value will in every case be deemed inadequate. We think, indeed, that the statute did not mean that a donee should be disturbed unless by one who gave a solid, pnce and sucha as shews that he bargained for and thought he was buy-the land itself, and not the chance of gaining it at law. & ’ _ co it is easier and more discreet to confine ourselves to say *287 ing what will not do, as the cases arise, and not go beyond adjudged cases in laying down rules a priori.
i his power the court cm it"rove practically or"nuionve-w-ni’be'’(lit-ferences of opinion as the value afsoSoppos-iigevuieuoe price paúl beapaki? & mu-h allow be made for many men to lay out money unless they get a bargain, & likewise fnr their re-luc'ance to purchase what is claimed by another, cannot be goi by them without the trouble and expense of litigation. These are all proper considera-lions lo be left to a jury and to be weighed by them,lunder proper information at the same time as to the law.
Certainly, we think, the Court will not enter into the question of the inadequacy of consideration, as per se vitiating the sale, unless it be plain and great, or gross, as it is commonly called. We have seen that in Upton v. Basset a year’s income was called a petty and inadequate consideration. In Doe v. Routledge, one tenth part of the value would not sustain the conveyance. In Metcalf v. Pulvertoft, Lord Eldon thought one third of the value too little; and so should we also think. Prices may range between the extremes of what close men would call a good bargain on one hand, and a bad or even a hard bargain on the other, and the law may not interfere. But when such a price is given, or pretended to be given, that every body who knows the estate, will exclaim at once, “why, he has got the land for nothing,” the law would be false to itself, if it did not'say sternly, and without qualification, to such a person, that he had not entitled himself to the grace and protection of the statute. It is obvious, that there is no morality to vindicate the attempt on the part of a donor, to defeat his gift by a sale for even a full price. Yet it is acknowledged, that another may lawfully purchase from him and may hold, provided he be really a purchaser. Now, to make him such, it would seem clear that he must give such a price as thereby to create a conviction in an honest mind, that the former donee ought to give up the laud, or be deprived of it, rather than he should lose the money paid. Now, can that be said in this case? No. It is to be remembered, that no facts are left iu doubt here. The value of the land and the price to be given, are admitted by the plaintiff or proved by his own evidence; and it thence appears, that the consideration was just one five hundreth part of the value. Surely, that consideration is so utterly and enormously inadequate as to make it a palpable fraud to attempt, under the pretence of it, to defeat a previous deed. How could the lessor of the plaintiff contend with a creditor of his bargainor? Suppose Falls to have been indebted in the sum of $25,000: and to have sold this estate —of that value — for this pitiful sum of $50. Would it re *288 quire a moment’s thought to arrive at the conclusion that such a sale could not stand against the creditor’s execution? TVhy? Because the sale was not one for the value; nor ior surn t^iat cou^ be mistaken for the value by the parties or any one else, or could be called so with a serious face. This case stands upon precisely the same reason; for he who is deemed a purchaser or a volunteer in the one case, must bear the same character in the other.
It is a mockery for the plaintiff to set up his lessor as a purchaser. The consideration is so very diminutive, so nearly nominal, as not to give even a color of fairness to the transaction, as a purchase of the land. It would hardly pay for a ticket in a lottery for it, on any common scheme. It is, to the purpose now under discussion, the same as five shillings or a pepper corn. Each will make a conveyance formally sufficient as between the parties to it. But, neither will do, to turn that conveyance, which is really a gift, into a purchase, to the prejudice of third persons.
The judgment of the Superior Court is reversed and a venire de novo directed.
Pur Curiam. Judgment reversed.