BIVINGS v. GOSNELL.

(Filed December 8, 1903.)

1. DEEDS—*Recordation.*

> Where a deed is recorded in the county where the land is situated, and the county is afterwards divided, it is not necessary to register the deed in the new county, though the land lies therein.

2. EJECTMENT—*Title—Evidence—Possession—Acts 1897, ch. 109.*

> The evidence in this case to recover land is sufficient to warrant the denial of a motion to dismiss.

ACTION by Mary M. Bivings and others against William Gosnell and others, heard by Judge *E. B. Jones* and a jury, at March Term, 1903, of the Superior Court of POLK County. From a judgment for the defendant the plaintiff appealed.

*Solomon Gallert,* for the plaintiff.
No counsel for the defendant.

CONNOR, J. This was an action brought for the recovery of a tract of land fully described in the complaint. The plaintiffs allege title in themselves, possession of a part of the property by the defendants, and the wrongful withholding. The defendants deny each allegation of the complaint, thus

imposing upon the plaintiffs the duty of proving title, possession and the unlawful withholding. For that purpose the plaintiffs introduced a grant from the State to William Garrett, dated September 12, 1831, and registered in Polk county; a deed from William Garrett to James Morris, dated December 7, 1833; a deed from Garrett to Morris, April 14, 1834, registered in Rutherford County; the will of James Morris, dated February 27, 1855, probated in Rutherford County. The defendants objected to the introduction of the two deeds and the will, for that they were not properly probated and recorded in Polk County. The objection was overruled and the defendants excepted. The plaintiffs introduced S. B. Edwards, who testified that he was a surveyor and surveyed the lands in controversy. Upon being shown the plat he testified that it covered the land in controversy; that certain lines pointed out on the plat covered the land claimed by and in possession of the defendants. The plaintiffs then introduced James Pritchett, who testified that he was sixty-nine years old and lived adjoining the Morris land for thirty years; that he had cultivated a part of it—about two acres—and he and his son had been in possession for thirty or thirty-five years; that he paid rent as taxes on all of the land; that he went into possession under Morris. S. K. Cantrell testified that he was sixty-five years old and knew the land in controversy, and had rented the Morris land twenty-three years ago; that Morris rented to one Johnson when he first knew him; that he was in possession on both sides of the road. Eli Shehan testified that he knew the land, and his father lived on it in 1859; that he lived on the right hand side of the road; north of the road he rented from James Morris, and his father cultivated part of both tracts of land; that he moved away before Pritchett moved there; that Morris came there and showed him where the line was when he cleared the land. N. B. Hampton testified that he was sixty-nine

years old and remembered when Polk County was organized; that the land in litigation was located in Rutherford County before Polk County was organized. N. H. Hill testified that he was eighty-three years old, and knew the Morris land in litigation; that it was located in Rutherford County before Polk County was organized. J. S. Pritchett testified that he knew the land in dispute; that he was in possession under Morris; that eight or ten years ago he turned it over to the witness and his father, and he cultivated about four acres on both sides of the road; that the road pretty well divided the cultivated land; that he cultivated a corn patch near the big swamp, between the swamp and the road, about three years ago.

The plaintiffs then proved that Mary Bivings and Martha Rawley, plaintiffs, were daughters of James Morris, Sr., and that James Morris, Sr., died before the war. It was in evidence that Polk County was formed in 1855. The will of James Morris directed the Garrett land to be sold and the money divided between his wife and daughters.

The defendant introduced no testimony and moved to dismiss the action under the Act of 1897, ch. 310. The motion was allowed and plaintiffs appealed.

The ground of the objection to the introduction of the deeds is not pointed out in the objection. We assume that it was because they were not recorded in Polk County. It appears that they were recorded in Rutherford County, and that when so recorded the land was situate in that county, the county of Polk having been established in March, 1855, comprising that portion of Rutherford in which the land is located. We are not advised of any statute or rule of law requiring the registration of deeds, in such cases, in the new county. In Devlin on Deeds, sec. 669, it is said: "We are not apprised of any statute which would require an owner of land, having his deed properly registered in the county where

the land lies, to have his conveyance again recorded as often as by subdivision and changes the land may fall into a new or different county. Very prudent men may use such precautions. But it is not necessary for the protection of their rights, the first registry being amply sufficient." The deeds being properly recorded in Rutherford County were admissible.

The deeds being competent, the question is presented whether there was any evidence tending to show possession by the plaintiffs or those under whom they claim. His Honor being of the opinion that there was no such evidence dismissed the plaintiffs' action. We think in that respect he was in error. The boundaries of the land are clearly and fully set out in the deeds. There was testimony tending to show possession by Morris and his devisees sufficient to have been submitted to the jury. J. S. Pritchett says: "I know the Morris land—the land in dispute—I have been in possession of the land under Morris; eight or ten years ago he turned it over to me from my father; my brother-in-law had possession under me. The field I cultivated was about four acres on both sides of the road; don't know the boundaries of the land; the road pretty well divided the cultivated land. I cultivated a corn patch near the big swamp, between the swamp and the road, about three years ago." S. B. Edwards located the green field on the map. Shehan says that his father lived on the Morris land in 1859; that the surveyor ran around and all about where his father cultivated; that his father rented from James Morris, and that Morris came there and showed him where the line was when he cleared the land. James Pritchett testified that he cleared up some of the land fifteen years ago, and that he and his sons had it for thirty or thirty-five years. J. S. Pritchett, son of James Pritchett, testified that eight or ten years ago his father turned it over to him. It must be conceded that the testimony is very indefinite, but we

think it sufficient to be submitted to the jury on the question of possession, under proper instructions. But if the jury found that the land in controversy was included within the boundaries of the deeds, the legal title, which, under the will of James Morris passed to his heirs, until divested by sale for partition drew the possession to them, and in the absence of any evidence of possession by any one else for a sufficient time to bar their entry, entitled them to recover the land of the defendants.

New trial.