This action was brought for the cancellation or reformation of a deed, the plaintiff alleging that it conveyed 76 1/2 acres of land, contrary to the agreement of the parties that it should pass only 10 acres, and that this was brought about by the fraud of A. R. Wilson, the grantee, and the mistake of Isham Hodges, the grantor, induced thereby.
The original parties died pending the suit, and their heirs were brought in by order of the court.
Plaintiffs amended their complaint by stating that Isham Hodges, their ancestor, was not mentally capable of making the deed at the time of its alleged execution. Evidence was taken, and under the same and *Page 298 
the charge of the court, the jury returned the following verdict, which will fully explain the matters in controversy:
1. Did Isham Hodges on 25 June, 1910, have sufficient mental capacity to execute the deed in controversy? Answer: No.
2. If not, did A. R. Wilson have knowledge of such mental incapacity? Answer: Yes.
3. Did M. A. Hodges, his wife, have sufficient mental capacity on 25 June, 1910, to execute the deed in controversy? Answer: No.
4. If not, did A. R. Wilson have knowledge of such mental incapacity? Answer: Yes.
 5. Was the deed of 25 June, 1910, procured to be executed by the fraud and misrepresentation of A. R. Wilson? Answer: Yes.
(326) 6. What consideration did A. R. Wilson pay for the execution of the deed of 25 June, 1910? Answer: $75.
Isham Hodges had sold and conveyed to A. R. Wilson 40 acres of the tract containing 116 1/2 acres, and afterwards agreed to sell an additional 10 acres. Wilson drew the deed for 76 1/2, reciting a consideration of $300, whereas only $75, the price of a buggy and harness, was actually paid by him. He represented that the deed conveyed only 10 acres, as agreed upon, and Isham Hodges, being old, infirm, and illiterate, and of unsound mind, was led by this false representation to execute the deed of 25 June, 1910, in the form prepared by A. R. Wilson. There was evidence that the land was then worth $1,000. This is plaintiff's version of the facts, which was denied. The respective parties offered evidence to support their contentions. Judgment was entered upon the verdict, and defendants appealed, after reserving their exceptions.
After stating the facts: There are many exceptions in this case, and we will consider them in their order as stated in the record.
First exception: The question asked of John Carter, who testified to Isham Hodges' mental incapacity, was competent, as it was proper, in reply to the matter brought out on the cross-examination; and even if erroneous, it was harmless and could not have influenced the jury. Counsel were really engaged in cross-firing with small ammunition, and it turned out to be practically a bloodless encounter.
Second exception: The testimony of H. P. Godwin, as to his communications and transactions with A. R. Wilson, was admissible, he not being an incompetent witness under Revisal, sec. 1690. The objection to this evidence must be overruled on several grounds: (1) At the time *Page 299 
the question was asked and answered, it did not appear that the witness had any interest in the controversy. (2) The part of the answer relating to the communication is not strictly responsive to the question. Objection, therefore, should have been made to the (327) answer rather than to the question, and a motion submitted to strike it out. This is generally true when the answer is objectionable and is not responsive to the question. It was held in McRae v. Malloy,93 N.C. 154, that if, on the examination of a witness, he makes a statement not responsive to a legitimate inquiry or foreign to it, the proper course is a request that the incompetent matter be stricken out or withdrawn, or that the jury be directed to disregard it, and there are numerous cases which require that course to be taken in order to save the party's rights.Deming v. Garney, 95 N.C. 528; Wiggins v. Guthrie, 101 N.C. 661; Blakev. Broughton, 107 at page 229, are some of them. (3) It does not appear that the testimony prejudiced the defendants, or could do so. On the contrary, it may all be true, and yet the deed be valid. It was, therefore, harmless. What he said was entirely immaterial to the controversy.
Third exception: We do not see why it was not relevant to prove when the mistake in the deed was discovered. It tended to show that plaintiffs had acted with promptness and diligence in having the deed corrected or set aside after the discovery was made.
Fourth exception: It was competent to show by nonexpert testimony that Isham Hodges was mentally unsound. Clary v. Clary, 24 N.C. 78; McRae v.Malloy, 93 N.C. 154; Smith v. Smith, 117 N.C. 314; Whitaker v. Carter,26 N.C. 465; Cogdell v. R. R., 130 N.C. 326; McLeary v. Norment,84 N.C. 235; Atwood v. Atwood, 37 L.R.A. (N.S.), 591, and notes.
Fifth and sixth exceptions: The court properly refused to nonsuit the plaintiffs. There was evidence to support their contentions, which upon such a motion must be viewed most favorably to them. Snider v. Newell,132 N.C. 614; Bivings v. Gosnell, 133 N.C. 574; Boddie v. Bond,154 N.C. 359; Ball-Thrash Co. v. McCormick, 162 N.C. 471.
Seventh exception: The issue tendered by the defendants was fully covered by those submitted by the court. When this is so, and opportunity is afforded to present the case in all its essential aspects, it is not error to reject the issue so tendered. Clark v. Guano Co.,144 N.C. 64, and cases cited; Jackson v. Telegraph Co., 139 N.C. (328) 347; Main v. Field, 144 N.C. 307; Johnson v. Lumber Co., ibid., 717. Besides, the issue tendered by defendants was merely evidential.
Eighth exception: This exception is taken to the fifth issue, and upon the ground that there is no evidence of fraud. But we think otherwise. *Page 300 
The evidence tends to show that Isham Hodges was poor and in necessitous circumstances; that he was infirm in health, being afflicted with dropsy and heart disease to such an extent that he required constant medical attention for at least ten years; that his mind was greatly impaired and he was not capable of understanding the nature and effect of an ordinary business transaction; that he was frequently in a comatose condition, which produced a state of drowsiness or stupor; that he and his wife, who signed the deed with him, were both mentally incapable of executing a deed, both being "halfwitted," as stated by a medical expert; the land was worth $1,000, whereas the grantee only paid $75 for it, a grossly inadequate price, which would cause any one to exclaim that he practically got it for nothing; and there were also false representations made to obtain the deed. This recital, which does not, by any means, embrace all the facts, is sufficient to show the futility of this objection.
What does the law, as administered in a court of equity, say in regard to these facts? A party who alleges fraud in the making or execution of a contract must establish his case by a preponderance of the evidence and to the satisfaction of the jury. Flamm v. Flamm, 163 N.C. 71; Dare County v.Construction Co., 152 N.C. 23. Fraud is not to be assumed on doubtful evidence or merely suspicious circumstances, but must be alleged and established by distinct proof, though it is only required to preponderate.Lord Hardwicke has, perhaps, given us the best classification of fraud such as will invalidate a deed or contract, in Chesterfield v. Janssen, 1 Atk., 301, 1 Lead. Cases in Equity, star page 341 (4 Am. Ed., 773):
1. Fraud arising from the facts and circumstances of imposition;
(329) 2. Fraud arising from the intrinsic matter of the bargain itself;
3. Fraud presumed from the circumstances and condition of the parties contracting;
4. Fraud affecting third persons not parties to the transaction. Bispham on Equity (5 Ed.), sec. 24.
The third species of fraud, according to Lord Hardicke's
classification, is that which is presumed from the circumstances and conditions of the parties contracting; and this may, perhaps, be again subdivided into two classes, viz.: first, where one of the parties is laboring under some mental disability; and, second, where the transaction takes place under undue influence.
As to the first of these two classes, mere weakness of mind is not of itself a sufficient ground for equitable interference. It would be impossible to carry on the business of the courts if they undertook to *Page 301 
interfere in every case in which a superior and more astute intellect obtained an advantage in a bargain over a dull or feeble mind. But an entire absence of intellectual power, or great mental aberration, will be sufficient to cause a contract to be rescinded. Hence, the contracts of idiots and lunatics are void, or, at least, voidable. And while mere weakness of mind will not be enough, of itself, to justify a rescission, it will, nevertheless, always constitute an important element in actual fraud. If, therefore, a transaction be in the slightest degree tainted with deceit, the intellectual imbecility of the injured party will be laid hold of by a chancellor to make out a case of actual fraud, which might otherwise be incapable of proof. Bispham Equity (5 Ed.), sec. 230. These are substantially the observations of Mr. Bispham. He further says: "Whatever be the cause of the mental weakness — whether it arises from permanent injury to the mind, or temporary illness, or excessive old age — it will be enough to make the court scrutinize the contract with a jealous eye; and any unfairness or overreaching will be promptly redressed. As has been said by the Supreme Court of the United States, `wherever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to an absolute disqualification, and the consideration (330) given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party or his representatives or heirs, interfere and set the conveyance aside.' `The result of the decisions,' says an English chancery judge, in a modern case, `is that where a purchase is made from a poor and ignorant man at a considerable undervalue, the vendor having no independent advice, a court of equity will set the transaction aside.' A mere latent suspicion of unfairness, however, will not be enough. On the other hand, it need scarcely be remarked that the mere circumstance of old age or physical feebleness will not render a transaction fraudulent, if, in point of fact, the party is intelligent and capable." Bispham's Equity (5 Ed.), sec. 230, pp. 330, 331.
This Court laid down an analogous principle in Hartly v. Estis,62 N.C. 167, by Judge Battle: "Weakness of mind alone, without fraud, is not a sufficient ground on which to invalidate an instrument, nor will old age alone, without fraud, have that effect. But excessive old age, combined with weakness of mind, may constitute a ground for setting aside a conveyance. Smith v. Beatty, 2 Ire. Eq., 456. Neither weakness of mind nor old age is of itself a sufficient ground to invalidate an instrument. To have that effect there must be some fraud in the transaction, either expressly proved or to be inferred from the circumstances. Suttles v. Hay, 6 Ire. Eq., 124. Mere inadequacy of price is no ground *Page 302 
for setting aside a contract, unless it be such as amounts to apparentfraud; or the situation of the parties is so unequal as to give one of them an opportunity for making his own terms. Potter v. Everitt, 7 Ire. Eq., 152. Where a person standing in a confidential relation to another uses the influence and advantages of his position to make an unequal contract with his dependent or inferior, a court of equity will relieve against it.Mullins v. McCandless, 4 Jones Eq., 425. It is an established doctrine, founded on a great principle of public policy, that a conveyance obtained without any proof of fraud, by one whose position gave him power and influence over the donor or grantor, shall not stand at all if (331) without consideration, and shall stand as a security only for the sum advanced if upon a partial and inadequate consideration.Futrill v. Futrill, 5 Jones Eq., 61."
We must be careful to note what was formerly said by the same judge, for the Court, in Suttles v. Hay, supra, at p. 127, in regard to his quotation from Smith v. Beatty, supra, concerning excessive old age and mere weakness of mind, as follows: "It is well settled that neither weakness of mind nor old age is, in the absence of fraud, a sufficient ground to invalidate an instrument. Smith v. Beatty, 2 Ire. Eq., 456. And although it is said in the same case, `that excessive old age, with weakness of mind, may be a ground for setting aside a conveyance obtained under such circumstances,' yet, it is manifest, that to have this effect there must be some fraud in the transaction, expressly proved or inferred from the circumstances. It is incumbent, then, upon the plaintiffs to prove their charge that the deed was procured from the grantor by the fraudulent exercise of undue influence over him by the grantee and his wife." The subject is fully discussed, with ample citation of authorities, in 2 Pomeroy's Eq. Jur. (1882), secs. 922 to 929 and 943 et seq.
With these authorities before us, we have but little difficulty or hesitation in considering the transaction between Isham Hodges and A.R. Wilson, and declaring it as having a sufficiently infectious element to induce a cancellation of the deed which the latter obtained by his fraudulent practices.
We said in Dorsett v. Manufacturing Co., 131 N.C. at p. 260, what appears to be much in point here: "It is true that inadequacy of consideration alone is not sufficient to set aside a written instrument `unless the consideration is so inadequate as to shock the moral sense and cause reasonable persons to say he got it for nothing.:' But it is proper evidence to be considered upon an issue of fraud, and may, in connection with other evidence and circumstances tending to show fraud, be sufficient to establish the fraud and to set aside the instrument. McLeod v. Bullard,84 N.C. 515. And the rule to be observed in cases where the *Page 303 
validity of the instrument is attacked upon the ground of fraud is the preponderance or the greater weight of the evidence. Harding v.Long, 103 N.C. 1; 14 Am. St., 775, where the distinction is (332) drawn between cases for the reformation of the instrument and those sought to be set aside for fraud."
We have, in this case, to start with, evidence of the inadequacy of price. As said in Worthy v. Caddell, 76 N.C. 82: "The party assuming to be a purchaser for valuable consideration must prove a fair consideration, not up to the full price, but a price paid which would not cause surprise or make any one exclaim, `He got the property for nothing; there must have been some fraud or contrivance about it.'" Printing Co. v. Herbert,137 N.C. 317; Collins v. Davis, 132 N.C. 109, and Fullenweider v. Roberts,20 N.C. 278, where it is defined as "a fair and reasonable price, according to the common mode of dealing between buyers and sellers." There is a great disproportion between $1,000 and $75. Besides this, there is proof of old age, great mental weakness and imbecility, false representations as to the contents of the deed, and of an evident purpose to overreach "those poor and halfwitted people," formerly slaves, in the transaction.
It may be conceded that old age, physical infirmity, and weakness of mind are not in themselves, and without some fraudulent element, sufficient to arouse the conscience of the court to action in behalf of those who are thus afflicted, and who appeal for protection or relief against one who, by virtue of greater strength in those respects, has acquired an advantage over them, as it is said that a court of equity will not measure the size of people's understandings or capacities (1 Mad. Ch. Pr., 280), provided they have sufficient intelligence to understand the nature and effect of the transaction. But instead of having only a few of the necessary elements besides old age and weakness of mind, we have about every conceivable one, that is, if the evidence, and every reasonable inference therefrom, is to be considered in the most favorable light for the plaintiffs, and this is enjoined upon us. Our conclusion is that there was ample evidence to support the verdict and judgment of the court. What is here said applies with equal force to the ninth exception.
Tenth exception: There is no merit in this assignment of (333) error. The comment of plaintiff's counsel was only in reply to what defendant's counsel, who preceded him in the argument to the jury, had said. If there was technical error in not ruling out all reference to the pleading, we do not see that it was of sufficient importance for a reversal, as it added little or nothing to the weight of the other evidence. *Page 304 
There are many exceptions to the charge of the court, but a careful scrutiny of it has convinced us that no substantial error was committed by the court, if error at all. It stated the questions in controversy with clearness and fullness and with entire impartiality, arraying the various contentions of the parties, and correctly explained the law as applicable to the facts. If the definition of fraud was not accurate, the error was corrected by the subsequent parts of the charge, explaining fully what facts the jury must find in order to constitute fraud. We must read the charge as a whole, and not any single or detached portion, in order to fairly and properly construe it. Aman v. Lumber Co., 160 N.C. 369, citingS. v. Exum, 138 N.C. 599, and S. v. Lance, 149 N.C. 551.
But in this case the verdict finds that Isham Hodges and his wife were mentally incapable of executing the deed, and that A. R. Wilson knew it, and as this finding is, of itself, sufficient to invalidate the deed, any error on the issue as to fraud becomes immaterial and harmless.Sprinkle v. Wellborn, 140 N.C. 163. Eliminating the fifth issue, and enough is still left in the verdict, which is free from error, to support the judgment. But there was no error as to the fifth issue, and the combination of facts shown by the evidence, and which passed into the verdict, as much so as if therein set forth, was sufficient to authorize the surrender and cancellation of the deed as decreed by the court. Westv. R. R., 151 N.C. 231. The court properly refused to charge, if there was any doubt, the jury should find for defendant. It is so expressly held in Asbury v. R. R., 125 N.C. 568. The charge was full and correct as to the burden and quantum of proof. It is competent to show the consideration of the deed to be other than the one recited (334) therein, when it is attacked for fraud and undue influence, as in this case. McLeod v. Bullard, 84 N.C. 515; Powell v.Heptinstall, 79 N.C. 206. There was sufficient allegation as to the plaintiffs being the heirs of Isham Hodges, and defendants being the heirs of A.R. Wilson. The facts, in this respect, are really found by the judge, and his order making them parties was based upon the finding.
There was something said on the argument before us about the return of the $75 paid by A. R. Wilson to Isham Hodges. Whether defendants are entitled, as matter of legal right, to this return, is a question of some moment, and is not free from difficulty, but we are relieved of any discussion of the matter by the offer of plaintiffs here to make the return. When the law cancels a contract or deed, it seeks to place the parties in statu quo, as nearly as this can be done, for while the one party may have been wronged, its judgment is not punitive, and the wrong is considered adequately avenged if the status quo is fully restored. This is not intended as an intimation of our opinion upon the legal rights of the *Page 305 
parties, but as preliminary to a suggestion that the offer of plaintiffs to restore the money is responsive to the general principle of equity, and, at least, is a just concession of the moral right involved and creditable to them. The proper amendment of the judgment will be made to carry out this agreement.
We find no error in the record. Defendants will pay the costs of this Court.
No error.
Cited: Gray v. R. R., 167 N.C. 435 (6g);Reynolds v. Palmer,167 N.C. 454 (11g); Lloyd v. R. R., 168 N.C. 649 (6g);Lamb v. Perry, 169 N.C. 443 (9g); Lamb v. Perry, 169 N.C. 444
(8f); Glenn v. Glenn, 169 N.C. 731 (8p); Hopkins v. R. R., 170 N.C. 487
(6g); Johnson v. Johnson, 172 N.C. 531 (8p); Boone v. Lee, 175 N.C. 385
(8p); Dixon v. Green, 178 N.C. 210 (9g); Bell v. Harrison, 179 N.C. 195,198 (9g); White v. Hines, 182 N.C. 289 (11g); S. v. Baldwin, 183 N.C. 683
(11g); S. v. Dill, 184 N.C. 650 (11g); Plyer v. R. R., 185 N.C. 362 (11g);Godfrey v. Power Co., 190 N.C. 31 (3g); Milling Co. v. Highway Com.,190 N.C. 697 (11g); Luttrell v. Hardin, 193 N.C. 270 (3g);Keller v. Furniture Co., 199 N.C. 416 (3g); Brown v. Featherstone,202 N.C. 572 (p); Bolich v. Ins. Co., 206 N.C. 151
(9g); Gilbert v. West, 211 N.C. 466 (p); Edgerton v. Johnson,217 N.C. 317 (3g); Carland v. Allison, 221 N.C. 122, 123 (9g);S. v. Gentry, 288 N.C. 650 (3g); Steelman v. Benfield, 228 N.C. 654
(3g); Tarkington v. Printing Co., 230 N.C. 359 (10g).