## STATE v. FRAZIER JONES.

(Filed 20 November, 1907).

**1. Indictment—Murder—Premeditation—Evidence—Instructions.**

Upon evidence tending to show that, after a slight quarrel with his wife, the defendant followed her into an adjoining room, where they were alone, and, after having some altercation with her, three pistol shots were heard· and three wounds were found on the deceased wife's person, some shown to be fatal; that the defendant soon thereafter came out of the room and acknowledged that he had killed his wife and knew he would hang for it, it is proper for the Judge to charge the jury: "If you are satisfied, beyond a reasonable doubt, that the prisoner weighed the purpose of killing long enough to form a fixed design to kill, and at a subsequent time, no matter how soon or remote, put it into execution, you should convict the prisoner of murder in the first degree."

**2. Same—Murder—Extenuating Circumstances.**

It is no evidence of extenuating circumstances, under an indictment for murder, that the deceased threw a piece of meat at the prisoner, leaving some grease upon his face, as an act of retaliation, for defendant to follow her into an adjoining room and kill her with premeditation.

**3. Same—Murder—Confession, Voluntary.**

Confessions made by defendant to an officer arresting him, without threat or inducement, that he had shot and killed the deceased and knew he would hang for it, being voluntary, are competent evidence upon a trial for murder.

CRIMINAL ACTION for murder, tried before *Moore, J.,* and a jury, at December Term, 1906, of the Superior Court of GUILFORD County.

The defendant was indicted for and convicted of killing his wife, Lula Jones. The exceptions were mainly directed to the evidence and the charge of the Court upon the question whether the killing was done with deliberation and premeditation, so as to constitute murder in the first degree, and to the instruction as to murder in the second degree. There was no evidence of manslaughter or excusable homicide. The testimony relating to the killing was as follows:

Bettie Holt testified that she and Lula Jones, on Thanksgiving Day, 1906, were in the kitchen, getting dinner, and the prisoner was outdoors, somewhere.   He came in at 12 o'clock and called for something to eat, and Lula, his wife (the deceased), gave him a piece of meat.   The prisoner said he didn't want that piece, but wanted a piece with a bone in it, and threw it at his wife.   His wife returned the compliment, and in the exchange of meat some grease found its way into the prisoner's face, and "he got angry because she put some grease on his face."   The prisoner's wife then went out of the door, into the adjoining room, and prisoner followed right behind her.   Witness heard them talking pretty loud, and in a short time heard the report of a gun.   Ethel Gibson, another witness, stepped to the door and, looking in, said: "Uncle Frazier has killed Aunt Lou."   Witness then ran, and, while running, heard a gun fire, and when she had run as far as the hogpen, heard the gun fire again.   Witness also testified that she saw deceased lying in front of the fireplace, and that one bullet went in one ear and out the other; another entered the back of the head and came out of her forehead; the third went through deceased's hand.   Witness also testified that the prisoner was the only person in the room with the deceased.

Ethel Gibson testified that when she heard the first shot she stepped up to the door and, looking in, saw deceased sitting by the fire, in a chair, and the prisoner was standing on her left side.   She then saw the prisoner hold the pistol up to the left ear of deceased.   She then hallooed and ran.   Witness heard three shots in all, and then the prisoner ran out of the house, towards the railroad, with a pistol in his hand.

Caleb Summers testified that when the first shot was fired he was standing about 25 or 30 feet from the house, and when he heard the shot he looked towards the house and saw the prisoner shoot right down at his wife, who was lying on the floor; then he saw him come out of the house and kneel down

by the deceased. He then got up and came out, with the revolver in his hand.

Gus May, a policeman, testified that he was near the house when the shooting occurred, and saw the prisoner come out of the house with the pistol in his hand; that he ran after the prisoner and called upon him to halt, and arrested him and asked him why he shot his wife, and the prisoner said: "Maybe I will tell that later, but her business and my business is our business, and nobody else's"; and, further, "I shot my wife, and if she is dead I killed her. I am satisfied that she is dead, but I want to see her stretched out. I have killed her and can pay the penalty. I will be hanged, and I don't expect anything else." He also told the witness that he had shot her three times, and for the witness to keep the crowd from shooting him, as he wanted to be hanged and not butchered.

Dr. Jordan testified as to the death of the deceased, the wounds, the range of the bullets, and also that the deceased's clothing was burned from powder.

The prisoner introduced no evidence.

The Court, after explaining the nature of the charge to the jury, the different degrees of homicide, and the bearing of the evidence, instructed the jury as to premeditation and deliberation, as follows: "If you are satisfied beyond a reasonable doubt that the prisoner weighed the purpose of killing long enough to form a fixed design to kill, and, at a subsequent time, no matter how soon or how late, put it into execution and killed the deceased in pursuance of such fixed design to kill, then you should convict the prisoner of murder in the first degree. When the purpose or design to kill is formed with deliberation and premeditation, it is not necessary that such purpose or design be formed any particular length of time before the killing. The law does not lay down any rule as to the time which must elapse between the moment when a prisoner premeditates and comes to a determination in his

own mind to kill another person and the moment when he does the killing, as a test. It is not a question of time. It is merely a question of whether the accused formed in his own mind the determination of killing the deceased, and then, at some subsequent time, either immediate or remote, carried his previously formed determination into effect by killing the deceased. If there be an intent to kill and a simultaneous killing, then there is no premeditation. If the prisoner weighed the purpose of killing long enough to form a fixed design to kill, and, at a subsequent time, no matter how soon or how remote, put it into execution and killed the deceased, then he is guilty of murder in the first degree. The question of when or how long he had the fixed purpose to kill, if you find that he had such purpose, is determined independently of when he took up the pistol. If the prisoner intentionally shot Lou Jones, the deceased, with a pistol and intentionally killed her, and if the State has failed to show beyond a reasonable doubt that the killing was done with deliberation and premeditation, then the prisoner would be guilty of murder in the second degree. The jury are instructed that the prisoner cannot be found guilty of murder in the first degree unless the jury are satisfied from the evidence, beyond a reasonable doubt, not only that the prisoner is guilty of feloniously and intentionally killing the deceased; but it must appear from the evidence, beyond a reasonable doubt, that the killing was done with deliberation and in pursuance of a fixed and premeditated design on the part of the prisoner to kill the deceased."

There was a conviction of murder in the first degree, and, judgment having been pronounced upon the verdict, the defendant excepted and appealed.

*Assistant Attorney-General Clement* for the State.
*J. A. Barringer* for defendant.

WALKER, J., after stating the case: The charge of the Court to which exception has been taken by the defendant conforms to the rule of law which we have repeatedly laid down as applicable to cases of this kind.    It was full and explicit, and there was evidence to sustain it.    Indeed, the proof tended to show, not only premeditation and deliberation, but that the defendant committed a cruel murder, in cold blood, upon his weak and defenseless wife.    The language used by us in *State v. Daniel,* 139 N. C., at page 553, is appropriate to the facts as they appear in the record: "When we consider these facts in connection with the utter and cold indifference of the defendant after the shooting, what more deliberate act, upon previous reflection and meditation, we may well ask, could be imagined than this one?    The evidence was quite as strong as it was in *State v. Hunt,* 134 N. C., 684; *State v. Teachey,* 138 N. C., 587; *State v. Exum, ib.,* 599; *State v. Conly,* 130 N. C., 683; *State v. Lipscomb* and *State v. McCormac, supra.,* in which convictions for the capital felony were sustained. Indeed, the defendant's intent to kill was more calmly and deliberately conceived and executed than was the intent of any one of the defendants in the cases above cited.    There was some ground to argue in those cases that the slayer might have committed the act in a transport of passion, but there is no evidence in this case to indicate anything but coolness of design and a deliberate purpose recklessly and wantonly to take human life, all of which was prompted by a bad heart, desperately wicked and fatally bent upon mischief.    The mere fact that the defendant accomplished his purpose within a comparatively short space of time can make no difference." The cases therein collected, and *State v. Banks,* 143 N. C., 652, fully sustain the charge.    In the case last cited *Justice Hoke* says: "In this charge, as to murder in the first degree, the Court excludes all idea of a killing simultaneous with the conception of the homicidal purpose, and directs the jury, in effect, that, before they can convict of the higher crime, the

killing must be from a fixed determination, previously formed, after weighing the matter. The charge, we think, gives the prisoner the full benefit of the principle contended for by him, and is fully sustained by authority," referring to numerous cases. We have examined the entire charge carefully, and have failed to discern any error therein. The evidence tends to show that the defendant made up his mind as to what he would do, or, in other words, premeditated the killing, when he left the house in which his Thanksgiving dinner was being prepared, and that he executed his purpose deliberately and with heartless brutality. The manner of the killing tends to show that he had fully determined to do his innocent victim to death. His wife's slight retaliation when he threw the meat at her was not sufficient legal provocation under the circumstances of the case; and if, after so slight a provocation—if provocation it was, in law—he slew upon a principle of revenge, after sufficient time had elapsed thereafter, in which he premeditated and deliberated upon his act, he is as guilty as if there had been no such alleged provocation. Foster, in his Crown Law, p. 296, says: "For, let it be observed that, in all possible cases, deliberate homicide upon a principle of revenge is murder. No man, under the protection of the law, is to be the avenger of his own wrongs. If they are of such a nature as for which the laws of society will give him an adequate remedy, thither he ought to resort; but be they of what nature soever, he ought to bear his lot with patience."

The confession made to the policeman was competent, it appearing that no threat was made to extort it, and that there was no promise to induce the defendant to make it. There is nothing to indicate that it was not voluntary. The fact that the defendant was in the custody of an officer when the confession was made does not of itself render it incompetent. The question is, was it voluntary? *State v. Bohannon,* 142 N. C., 695; *State v. Conly,* 130 N. C., 683; *State v. Flemming, ib.,* 688; *State v. Edwards,* 126 N. C., 1051; *State v.*

*Smith,* 138 N. C., 700.　There was no promise held out, and no influence exerted, which would be calculated, under the circumstances, to induce a confession, irrespective of its truth or falsity.　Wigmore on Ev., sec. 831.

Upon a review of the record and case on appeal, we find no error in the proceedings below.

No Error.