STATE v. JOHN H. HAUSER.

(Filed 18 May, 1932.)

**Criminal Law G i—Opinion evidence in this case held to invade province of jury and its admission over defendant's objection was error.**

Where, in a prosecution for murder in the first degree, the defendant pleads mental incapacity to premeditate or deliberate, and introduces supporting evidence, the question is for the jury to determine, and testimony to the effect that the defendant did have mental capacity to plan a murder and carry the plan into execution is an invasion of the province of the jury, and its admission over the prisoner's exception constitutes reversible error, evidence of this character being limited to the general mental capacity of the defendant. As to whether a witness who has not qualified as an expert may be permitted to give evidence of this character, *quære?*

APPEAL by defendant from *Clement, J.,* at August Term, 1931, of
DAVIE.

Criminal prosecution tried upon an indictment charging the prisoner
with the murder of one Fred S. Styers.

The prisoner is a farmer, 82 years of age, "feeble, decrepit and lame,"
living in Davie County. On 28 May, 1931, he shot and killed his son-in-
law, Fred Styers, a strong and vigorous young man, 35 years of age.
The prisoner's plea was that of self-defense, and mental incapacity to
premeditate or plan a murder. He offered expert testimony tending to
show that he was suffering with "senile dementia, chronic myocarditis,
high-blood pressure, enlargement of the heart, hardening of the arteries,
partial blindness and lameness," by reason of which, in the opinion of
the witnesses, he was incapable of premeditation and deliberation.

In rebuttal, the State offered a number of lay witnesses who testified
that in their opinion the prisoner could distinguish good from evil and
that he knew the difference between right and wrong. *S. v. Terry,*
173 N. C., 761, 92 S. E., 154.

Then, the following questions were propounded to said witnesses, to
which the prisoner in apt time objected:

"Q. Mr. Douthit, in your opinion did the accused have sufficient
mental capacity to plan a murder and then carry it into execution?
(Objection; overruled; exception.)

"A. Well, I think—yes, sir; he could make a plan ahead of time and
go ahead and do it all right."

"Q. Mr. Graham, have you an opinion as to whether John Henry
Hauser has the mental capacity to plan a murder and then commit it,
execute the plan? (Objection; overruled; exception.)

"A. I think he had sufficient mind to plan a thing and then execute
it."

"Q. Mr. Riddle, from your observation of Mr. Hauser prior to the
homicide, have you an opinion satisfactory to yourself as to whether or
not John Henry Hauser has sufficient mental capacity, that is to say,
mind or reason to plan a murder and then execute it? (Objection;
overruled; exception.)

"A. I think he did."

Verdict: Guilty of murder in the first degree.

Judgment: Death by electrocution.

The prisoner appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Seawell
for the State.*

*A. T. Grant and Manly, Hendren & Womble for defendant.*

STACY, C. J. The basis of the prisoner's objection to the testimony of the witnesses Douthit, Graham and Riddle is, that they are non-experts, and, therefore, incompetent to express an opinion on the mental condition of the accused. Authorities may be found for this position (8 R. C. L., 190), but our own decisions point in another direction. *Clary v. Clary,* 24 N. C., 78. That the evidence in general, pro and con, was competent on the question of alleged felonious intent, or premeditation and deliberation, is not controverted. 1 Wharton's Crim. Law, p. 85, sec. 64.; Wharton on Homicide (3d ed.), p. 802-803, sec. 538-539; *S. v. Wilson,* 197 N. C., 547, 149 S. E., 845; *S. v. Ross,* 193 N. C., 25, 136 S. E., 193; *S. v. English,* 164 N. C., 497, 80 S. E., 72.

Without undertaking to review the cases, which deal with "expert knowledge in the hands of an inexpert," we think the opinion evidence of the witnesses Douthit, Graham and Riddle invaded the province of the jury, and, for this reason, should have been excluded. *Marks v. Cotton Mills,* 135 N. C., 287, 47 S. E., 432; *Stanley v. Lumber Co.,* 184 N. C., 302, 114 S. E., 385; *Marshall v. Tel. Co.,* 181 N. C., 292, 106 S. E., 818; *Kerner v. R. R.,* 170 N. C., 94, 86 S. E., 998.

Almost the identical question here presented arose in the case of *S. v. Journegan,* 185 N. C., 700, 117 S. E., 27, where the following questions were held to be incompetent: "In your opinion, do you think that Journegan has sense enough to operate a blockade still?" And further: "Do you think, on 12 December, 1922, Journegan had sufficient mental capacity to operate a still, and to know it was wrong to do it?" The defendant was charged with the unlawful manufacture of spirituous liquors and with operating a distillery. *Clark, C. J.,* delivering the opinion of the Court, said: "It would lead to strange results if the precedent were set in this case that a witness could testify whether in his opinion a man who committed forgery had 'sufficient mental capacity to do this and understand that it was wrong'; or whether a man guilty of homicide by the use of a deadly weapon had 'mental capacity to use a deadly weapon, and to know it was wrong to kill.' . . . There is no precedent in the books to ask as to the mental capacity to commit any particular crime."

Again, in *Tillett v. R. R.,* 118 N. C., 1031 (at p. 1042), 24 S. E., 111, *Avery J.,* speaking for the Court, said: "When, therefore, the witness was asked to state whether a car was coupled in a negligent manner, the question was calculated to elicit an opinion upon one of the very questions which the jury were empaneled to decide, and the objection to its competentcy, being in apt time, was properly sustained. *Smith v. Smith,* 117 N. C., 326; *Wolf v. Arthur,* 112 N. C., 691."

It has been held competent for a witness to give his opinion as to whether a person is a Negro (*Hopkins v. Bowers,* 111 N. C., 175, 16 S. E., 1), or whether his appearance indicates the presence of Negro blood in his veins (*Gilliland v. Board of Education,* 141 N. C., 482, 54 S. E., 413); also as to the mental state of a party (*McRae v. Malloy,* 93 N. C., 154; *Sherrill v. Tel. Co.,* 117 N. C., 352, 23 S. E., 277), but in the instant case the witnesses were asked to express their opinions upon the very question, or one of the questions, which the jury was empaneled to decide. "The general rule undoubtedly is that witnesses are restricted to proof of facts, within their personal knowledge, and may not express their opinion or judgment as to matters which the jury or the court are required to determine." 1 Rice on Evidence, 325, quoted with approval in *Cogdell v. R. R.,* 130 N. C., 314, 41 S. E., 541. There are, of course, exceptions to this general rule of evidence, but the present case falls within none of them. *Barnes v. R. R.,* 178 N. C., 264, 100 S. E., 519; *Britt v. R. R.,* 148 N. C., 37, 61 S. E., 601.

For the errors, as indicated, in admitting incompetent evidence, the prisoner. is entitled to a new trial. It is so ordered.

New trial.