STATE v. JAKE JONES.

(Filed 26 October, 1932.)

1. **Criminal Law G 1—Confession is not rendered involuntary by mere fact of presence of officers and arrest of defendant.**

   Only voluntary confessions are admissible in evidence, and a confession is voluntary only when it is in fact voluntarily made, but where there is no duress, threat or inducement, the mere fact that the prisoner was under arrest and that officers were present does not render his confession involuntary.

2. **Criminal Law B c—Burden of proving mental incapacity to commit crime is on defendant.**

   Where the defendant in a criminal prosecution sets up the defense of insanity the burden is on him to prove such defense to the satisfaction of the jury, and where the jury finds against the defendant on the evidence the verdict will not be disturbed on appeal.

3. **Same: Criminal Law G i—Nonexpert witness may testify as to sanity of defendant.**

   Where the defense of insanity is set up by the defendant in a criminal prosecution it is competent for nonexpert witnesses to testify as to his sanity or insanity when such testimony is based upon the witnesses' knowledge and observation of the defendant, the weight and credibility of such testimony being for the jury.

APPEAL by defendant from *Devin, J.,* at February Term, 1932, of WAKE.

Criminal prosecution tried upon an indictment charging the prisoner with the murder of one J. H. Poole.

Verdict: Guilty of murder in the first degree.

Judgment: Death by electrocution.

The prisoner appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*
*W. Y. Bickett and W. T. Hatch for defendant.*

STACY, C. J. The evidence on behalf of the State tends to show that on the night of 26 October, 1931, the prisoner, a colored boy 18 or 19 years of age, went out on the Milburne Road to Circle Filling Station No. 2, about one-half mile from the city of Raleigh, for the purpose of robbing said filling station. He was armed with a 32-caliber Smith and Wesson revolver. As he approached the station, he saw J. M. Jackson, the manager, and J. H. Poole, the night watchman, standing by an open fire in the yard. It was a cold night. After waiting a few minutes, while a number of cars were passing along the highway, the prisoner fired from ambush in the direction of the two men, hitting the night watchman who fell to the ground before reaching the door of the filling station. The prisoner then approached his victim and shot him again while he was down. He entered the filling station and robbed the cash register of part of its contents, retreating just in time to escape the return fire of the manager, J. M. Jackson. The injured watchman was rushed to the hospital where he died shortly thereafter.

The prisoner was arrested at the home of George Garner with whom he lived. At the time of his arrest he had a Smith and Wesson pistol under his pillow. He informed the officers that George Garner needed some money to pay his house rent, and had told him to go to the filling station, which place he had robbed before, and get the money; that he undertook to do so, arming himself with his Smith and Wesson pistol; that he did not intend to shoot Mr. Poole, but did intend to shoot Mr. Jackson as the latter had shot him in the arm a month before while he was robbing the filling station; and that he divided the money he got on the night of the homicide with George Garner.

The principal question presented by the appeal is the competency of the prisoner's confession made to the officers while under arrest. S. v. Livingston, 202 N. C., 809; S. v. Myers, 202 N. C., 351, 162 S. E., 764, and S. v. Davis, 125 N. C., 612, 34 S. E., 198, are cited as authorities for its exclusion.

Voluntary confessions are admissible in evidence against the party making them; involuntary confessions are not. A confession is voluntary in law when—and only when—it was in fact voluntarily made. S. v. Newsome, 195 N. C., 552, 143 S. E., 187.

It has been held in a number of cases that where there is no duress, threat or inducement, and the judge finds there was none here, S. v. Whitener, 191 N. C., 659, 132 S. E., 603, the fact of arrest or incarceration of the defendant when the confession is made does not ipso facto render it incompetent. S. v. Newsome, supra; S. v. Drakeford, 162 N. C., 667, 78 S. E., 308; S. v. Lance, 166 N. C., 411, 81 S. E., 1092; S. v. Jones, 145 N. C., 466, 59 S. E., 353; S. v. Bohanon, 142 N. C.,

695, 55 S. E., 797; *S. v. Horner,* 139 N. C., 603, 52 S. E., 136; *S. v. Exum,* 138 N. C., 599, 50 S. E., 283; *S. v. Flemming,* 130 N. C., 688, 41 S. E., 549. "We are not aware of any decision which holds a confession, otherwise voluntary, inadmissible because of the number of officers present at the time it was made. Nor has the diligence of counsel discovered any." *S. v. Gray,* 192 N. C., 594, 135 S. E., 535.

Speaking to the subject in *Hopt v. Utah,* 110 U. S., 574, *Mr. Justice Harlan,* delivering the opinion of the Court, said:

While some of the adjudged cases indicate distrust of confessions which are not judicial, it is certain, as observed by *Baron Parke* in *Regina v. Bald,* 2 Den. Cr. Cas., 430, 445, that the rule against their admissibility has been sometimes carried too far, and in its application justice and common sense have too frequently been sacrificed at the shrine of mercy. A confession, if freely and voluntarily made, is evidence of the most satisfactory character. Such a confession, said *Eyre, C. B.,* 1 Leach, 263, 'is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and, therefore, it is admitted as proof of the crime to which it refers.' "

And in *S. v. Patrick,* 48 N. C., 443, *Nash, C. J.,* animadverted on the subject as follows:

"*Baron Eyre,* in *Rex v. Hearne,* 4 Car. & Payne, 215 (19 E. C. L., 350), observes, a free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and, therefore, it is admitted as proof of the crime to which it refers; but a confession wrung from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape that no credit ought to be given to it. The material inquiry, therefore, always, in such cases, is, has the confession been obtained by the influence of hope or fear, applied by a third person to the prisoner's mind? This inquiry is, in its nature, preliminary, and is addressed to the judge, who admits the confession to the jury, or not, as he may find it to have been drawn from the prisoner by these motives. . . . Many cases are contained in our reports upon this rule of the criminal law; many of them irreconcilable with the principle announced by *Baron Eyre,* in the case cited, pressing the principle of exclusion too far, and applied when there could be no reason to believe that the inducement had any influence on the mind of the prisoner, and, thereby, occasioned the escape of many criminals. Philips Ev., 424; Joy on Jurors, 21.

"It seems now to be settled law upon this point, if the prisoner has made his own calculations of the advantages to be derived from confessing, and thereupon has confessed the crime, there is no reason to say it is not a voluntary confession. In order to exclude a confession,

the motive of hope or fear must be directly applied by a third person, and must be sufficient, in the judgment of the court, so far to overcome the mind of the prisoner as to render the confession unworthy of credit. Gr. Ev., 279, note 5."

The further defense interposed by the prisoner was that of mental irresponsibility or insanity. The evidence tending to support this plea was submitted to the jury and rejected or found to be unsatisfactory. *S. v. Campbell,* 184 N. C., 765, 114 S. E., 927; *S. v. Terry,* 173 N. C., 761, 92 S. E., 154.

In criminal prosecutions in this jurisdiction, as well as in many others, where insanity is interposed as a defense, the burden rests with the defendant, who sets it up, to prove such insanity, not beyond a reasonable doubt, but to the satisfaction of the jury. *S. v. Walker,* 193 N. C., 489, 137 S. E., 429; *S. v. Jones,* 191 N. C., 753, 133 S. E., 81.

Lastly, the prisoner complains that, in answer to his witnesses, the State was permitted, over objections, to offer the testimony of non-experts who expressed opinions upon his sanity or his ability to understand the difference between right and wrong. The exception is untenable. *S. v. Hauser,* 202 N. C., 738. Any witness who has had opportunity of knowing and observing the character of a person, whose sanity or mental capacity is assailed or brought in question, may not only depose to the facts he knows, but may also give in evidence his opinion or belief as to the sanity or insanity of the person under review, founded upon such knowledge and observation, and it is for the jurors to ascribe to his testimony that weight and credibility which the intelligence of the witness, his means of knowledge and observation, and all the circumstances attending his testimony, may in their judgment deserve. *Clary v. Clary,* 24 N. C., 78.

Anyone who has observed another, or conversed with him, or had dealings with him, and a reasonable opportunity, based thereon, of forming an opinion, satisfactory to himself, as to the mental condition of such person, is permitted to give his opinion in evidence upon the issue of mental capacity, although the witness be not a psychiatrist or expert in mental disorders. *White v. Hines,* 182 N. C., 275, 109 S. E., 31. "One not an expert may give an opinion, founded upon observation, that a certain person is sane or insane." *Whitaker v. Hamilton,* 126 N. C., 465, 35 S. E., 815.

The prisoner was accorded on trial every protection which the law affords him. The verdict and judgment will be upheld.

No error.