## STATE v. ROBY M. HAWKINS.

(Filed 2 November, 1938.)

**1. Criminal Law § 34c—Silence of defendant in face of accusation of guilt held competent as implied admission.**

Evidence that shortly after his wife's death when her assailant was unknown, defendant remained silent when he was accused of having killed her by his twelve-year-old son while they were in a room across the hall from where her body lay, defendant having shown no emotion when viewing the body, *is held* competent as a circumstance to be considered by the jury, since the occasion was such as to call for a denial by defendant.

**2. Homicide § 21—**

Evidence of threats are competent as tending to show premeditation and deliberation and previous express malice.

**3. Same—Where evidence discloses repeated threats, remoteness of first threat goes to its weight and not its competency.**

The State offered evidence that more than two years prior to the homicide defendant threatened to kill deceased, that a month prior thereto he made another threat, and testimony of a declaration of defendant's son, made after the homicide, that defendant had said he was going to kill her (deceased) and had done so. *Held:* The remoteness of the first alleged threat does not render it incompetent, since the remoteness goes to the weight of the evidence and not to its competency.

**4. Criminal Law § 33—**

Voluntary confessions are competent against the party making them; involuntary confessions are not.

**5. Same—**

Confessions otherwise competent are not rendered incompetent by the fact that at the time they are made defendant is under arrest.

**6. Same—**

The competency of an alleged confession is for the judge.

**7. Same—Testimony held properly admitted as being of voluntary confession.**

The State introduced evidence that the coroner told defendant after his arrest that "it looks like they have got you on the spot and the only way for you to get out of it is to plead insanity." To which defendant replied, "Well, I will never do it." The court admitted the testimony after it had heard evidence tending to show that defendant's statement was voluntary. *Held:* If the coroner's statement be interpreted as an accusation of guilt, the reply was not an admission, but if the reply be interpreted as a confession, the court in effect found that it was voluntary, and its ruling thereon is not error.

**8. Criminal Law § 29a—**

In criminal cases every circumstance that is calculated to throw any light upon the supposed crime is permissible.

**9. Homicide § 17—Evidence of defendant's mistreatment of his wife held competent in prosecution for her murder.**

Defendant was charged with murdering his wife. The State offered evidence tending to show that defendant, over a period of years, had beaten and mistreated his wife, and had had altercations with her brother over his treatment of her, and had threatened to kill her brother. *Held:* The remoteness of some of the facts testified to does not render the testimony incompetent but goes only to its weight, and the admission of the evidence generally will not be held for error in the absence of a request by defendant that the part of the evidence competent only as corroborating evidence be so restricted in its admission and in the court's charge.

**10. Criminal Law § 48b—**

The general admission of evidence competent for a restricted purpose will not be held for error in the absence of a request by defendant that its admission be restricted, and failure to charge specifically upon the nature of the evidence will not be ground for exception in the absence of a request for special instructions.

**11. Criminal Law § 31b—**

A witness who is a physician but not a psychiatrist, but who has talked with defendant and had an opportunity to observe him, may testify as to defendant's sanity.

**12. Homicide § 27c—**

The court's charge on defendant's contention that he was mentally incapable of premeditation and deliberation by reason of drunkenness, *held* without error, and the refusal of defendant's request for instructions on this aspect was proper.

**13. Homicide § 3—**

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation.

**14. Homicide § 16—**

The intentional killing of a human being with a deadly weapon implies malice, and, if nothing else appears, constitutes murder in the second degree. C. S., 4200.

**15. Same—**

Premeditation and deliberation are not presumed from an intentional killing with a deadly weapon, but must be established by the State beyond a reasonable doubt.

**16. Homicide § 4c—**

Premeditation means thought beforehand for some length of time, however short.

**17. Same—**

Deliberation implies an intention to kill executed by defendant in a cool state of blood in furtherance of a fixed design.

**18. Homicide § 21—**

The conduct of defendant before and after, as well as at the time of, the homicide, and all attendant circumstances, are competent on the question of premeditation and deliberation.

**19. Homicide § 25—Evidence held sufficient to be submitted to the jury on question of defendant's guilt of first degree murder.**

In this prosecution of defendant for the murder of his wife, evidence tending to show threats made by defendant against her life, of defendant's conduct before and after the homicide, and silence in the face of accusation of guilt under circumstances calling for a denial, and other evidence tending to identify defendant as the perpetrator of the crime, together with other circumstantial evidence of guilt, *is held* sufficient to be submitted to the jury on the question of defendant's guilt of murder in the first degree.

**20. Criminal Law § 57—**

Defendant's motion in the Supreme Court to set aside the verdict of guilty of first degree murder, made on the ground that the jury saw a moving picture show depicting a murder mystery, is denied.

APPEAL by defendant from *Grady, J.,* at April Term, 1938, of CRAVEN.

Criminal action on indictment charging defendant with the murder in the first degree of one Mittie Geneva Hawkins.

Verdict: Murder in the first degree.

Judgment: Death by asphyxiation.

Defendant appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*

*A. D. Ward, H. P. Whitehurst, and R. E. Whitehurst for defendant, appellant.*

WINBORNE, J. After careful consideration of all exceptive assignments, we find no error.

On the trial below the State offered evidence tending to show that: The dead body of defendant's wife, Mittie Geneva Hawkins, was found crumpled on the floor in the front room of their home near Cove City in Craven County, about 3 o'clock p.m. on 9 March, 1938. There were no eye-witnesses to the tragedy. A sound as of gunshot indoors was heard by neighbors about one-thirty o'clock. She had been shot over the heart with a shotgun, and No. 4 shot were taken from her body. An ironing board was near by and a shirt was in her hand. An empty shell recently fired and a shell loaded with No. 6 shot were found by the coroner in the hallway of the house.

The defendant was not then at home. Just before one o'clock on that day he went to a nearby store and bought "a quarter's worth" of gun shells loaded with No. 4 shot, seven shells of the same kind as those found in the house. On leaving the store defendant joined his father and R. M. White between the store and his house and tried to borrow a mule and plow from White to do some plowing. White testified: "He

seemed just like he had been for the past two years—under the influence of liquor, . . . acting like he had been on a drunk, or something. He acted nervous and could not use his tongue as he should."

Defendant was next seen about two o'clock, approximately a half mile to the rear of his home, coming up a path to the edge of a newground being cleared. He had a double barreled gun in his hand. He stopped, laid the gun down and sat down on the ground. He stayed there about an hour and a half. In the meantime he motioned for Willie Mitchell, who was working there, to come to him, and asked if he had any money. Mitchell talked with him five or ten minutes. His brother, Ernest, came there. Later defendant's brother, Levi, came. Soon thereafter defendant was seen to go toward the home of his father and in a short time came back, going in the direction of his home. When defendant reached his home the coroner, the sheriff and others were there to make an investigation. Defendant told the coroner that when he went to his mother's he found out his wife was dead. On being questioned by the sheriff, defendant said: "I hope you don't think I did it."

The coroner asked defendant if he wished to see his wife; he replied, "Yes," and, on being shown the wound, he "lit a cigarette and walked on out." He did not make comment or inquire as to how it happened. "He was just staunch." He showed no emotion.

Defendant told the sheriff that he owned a double barreled shotgun but that his brother, Ernest, borrowed it about two months before. The gun was found the next day under a pile of brush near the newground where defendant was seen the day before. Levi Hawkins pointed out the place. Both barrels of the gun were empty, but one barrel bore evidence of having been recently shot.

Walter Yates testified: "I had a conversation with Roby Hawkins in jail. I asked him if he was the young gentleman who killed his wife, and he said, 'Yes, sir.'"

The evidence tended to show that the defendant had been a heavy drinker for several years, and for the past year or more he had been drinking constantly.

Defendant testified substantially: That he had been drinking heavily for ten years; that he drank on the day of his wife's death; that he didn't remember seeing his father or Mr. White down town, nor going to dinner, but did remember talking with Willie Mitchell some time after dinner; that he did not kill his wife; that he knew he did not kill her; that he had no reason to kill her; and that he guessed he would have sense enough to know right from wrong. He denied buying the shells at the nearby store. He stated that, while he and his wife had fusses during their married life, he held no grudge or malice against her at any time. He testified that he knew nothing about the death of his wife

until he reached his father's home, where his sister informed him she was dead. He denied that his son had accused him of killing his wife. He denied that he had made the statement attributed to him by Walter Yates.

Royall Hawkins, twelve-year-old son of defendant, testified that he did not accuse his father of killing his mother. He further denied that, on learning that his mother was dead, he rode down town crying that his daddy said he was going to kill his mother and now he has done it.

The State offered evidence tending to contradict the son. Much evidence was introduced bearing on the extent to which defendant had been and was drinking, and as to his mental condition.

Other evidence will be referred to in treating the exceptions which we deem of sufficient importance to require consideration.

1. The defendant stresses on exceptive assignment the admission of the testimony introduced by the State tending to show that defendant remained silent when, soon after the discovery of the body, Royall Hawkins, the twelve-year-old son of defendant, was heard to cry out and say to his father, "You are the one that killed my mammy, too," and also, "You said you were going to kill her and you killed her and she is dead."

In *S. v. Wilson,* 205 N. C., 376, 171 S. E., 338, it is said: "When a statement is made, either to a person or within his hearing, implicating him in the commission of a crime to which he makes no reply, the natural inference is that the implication is perhaps well founded, or he would have repelled it. *S. v. Suggs,* 89 N. C., 527. But the occasion must be such as to call for a reply. 'It is not sufficient that the statement was made in the presence of the defendant against whom it is sought to be used, even though he remained silent; but it is further necessary that the circumstances should have been such as to call for a denial on his part, and to afford him an opportunity to make it.' 16 C. J., 659.

"Silence alone, in the face or hearing of an accusation, is not what makes it evidence of probative value, but the occasion, colored by the conduct of the accused or some circumstance in connection with the charge, is what gives the statement evidentiary weight. *S. v. Burton,* 94 N. C., 947; *S. v. Bowman,* 80 N. C., 432."

"The general rule is that statements made to or in the presence and hearing of a person, accusing him of the commission of or complicity in a crime, and, when not denied, admissible in evidence against him as warranting an inference of the truth of such statements." . . . *S. v. Wilson, supra.*

At the time the charges were made defendant was in a room across the hall from the room in which the body of his wife lay. It was not then known who killed her. Defendant manifested no emotion. Under well settled principles of law, the occasion called for a denial. The circum-

stance is competent for consideration by the jury. *S. v. Jackson,* 150 N. C., 831, 64 S. E., 376; *S. v. Burno,* 200 N. C., 142, 156 S. E., 783; *S. v. Wilson, supra.*

2. The State, over defendant's objection, offered evidence tending to show threats of defendant against his wife, the deceased: (1) Mrs. Larry McCoy testified that in the summer of 1935, on being attracted by the children screaming, she heard defendant say that he was going to kill his wife; and (2) Mrs. Jessie Johnson testified that she heard Royall Hawkins, the twelve-year-old son of defendant, in the house soon after the discovery of the body, say to his father, "You said you were going to kill her and you killed her and she is dead," to which defendant was not heard to reply. Also, without objection, the State offered the testimony of the ten-year-old daughter of defendant that about a month before her mother's death, "I heard him say that he was going to kill her if she stayed there and he was going to kill her if she left." In the admission of this testimony there is no error.

Evidence of threats are admissible and may be offered as tending to show premeditation and deliberation, and previous express malice, which are necessary to convict of murder in the first degree. *S. v. Payne,* 213 N. C., 719, 197 S. E., 573, and cases cited; *S. v. Bowser, ante,* 249.

The fact that the first alleged threat was made more than two years prior to the homicide does not render such evidence incompetent as a matter of law. The remoteness goes only to the weight of the evidence and not to its competency. 8 R. C. L., 187; *S. v. Merrick,* 172 N. C., 870, 90 S. E., 257; *S. v. Payne, supra.*

In *S. v. Johnson,* 176 N. C., 722, 97 S. E., 14, *Brown, J.,* said: "We might hesitate to admit evidence of threats made two years before the homicide, if they stood alone, although threats made twelve months prior were admitted in *S. v. Howard,* 82 N. C., 624, without evidence of continuing threats. In this case there is evidence of continuing and repeated threats up to six months before the homicide . . .," cited in *S. v. Wishon,* 198 N. C., 762, 153 S. E., 395, wherein the Court said: "Evidence of the threats first made is competent at least in corroboration." *S. v. McDuffie,* 107 N. C., 885, 12 S. E., 83.

3. The coroner, as witness for the State, was permitted over defendant's objection to testify that on the trip to jail he heard the sheriff say to defendant, "Roby, it looks like they have got you on the spot and the only way for you to get out of it is to plead insanity," to which defendant replied: "Well, I will never do it." The evidence was admitted after the court asked the witness: "Was anything said to him or any threats used to make him talk, or were any inducements made to him to say anything?" to which the witness answered, "No, sir, we told jokes along the road."

Defendant here insists that the statement of the sheriff, as quoted by the coroner, constitutes not merely a charge of the crime alleged, but a threat, which could reasonably have been interpreted as the holding out of hope, and inducement to defendant to plead insanity. If the statement be interpreted as an accusation of guilt, the answer is certainly not an admission. If the answer can be interpreted as a confession, the court, in effect, finds that it is voluntary.

Confessions are voluntary or involuntary. Voluntary confessions are admissible in evidence against the party making them; involuntary confessions are not. *S. v. Stevenson,* 212 N. C., 648, 194 S. E., 81.

Where there is no duress, threat or inducement, and the court so finds, the fact that defendant was under arrest at the time the confessions are made, does not *ipso facto* render them incompetent. *S. v. Stefanoff,* 206 N. C., 443, 174 S. E., 411. The competency of the confession is a matter for the judge. *S. v. Whitener,* 191 N. C., 659, 132 S. E., 603; *S. v. Stevenson, supra.* The judge ruled the statement and answer competent, and in this ruling we find no error.

Defendant relies upon *S. v. Davis,* 125 N. C., 612, 34 S. E., 198. The factual situation there is different from that here, and the case is distinguishable. There the defendant confessed.

4. The State, over defendant's objection, offered evidence tending to show that a few months before the homicide defendant had struck his wife and inflicted bruises on her lips and hips; that about four years prior thereto H. L. Civils, a brother of deceased, had talked with defendant about his whipping her; that about three or four years prior thereto her brother, Dr. Harvey Civils, had accosted defendant in regard to mistreatment of her; that on several occasions within the last year Dr. Civils and others had seen bruises on the person of deceased; that six days before her death, deceased went to the office of Dr. Civils crying and that at that time he saw bruises; that the day before her death a colored woman saw deceased crying, and also saw a knot on her head and bruises on her hip; that about four years ago witness heard defendant threaten to kill Dr. Harvey Civils, and, on asking in presence of defendant what he was mad at Dr. Civils about, the deceased said, "Just a little fight Roby and myself had, and Dr. Civils got mad about the way he was treating her, that's all"; and that the day before the homicide defendant was fussing and cursing in talking about deceased buying clothes.

Defendant entered a general objection to all questions along this line of evidence.

In criminal cases every circumstance that is calculated to throw any light upon the supposed crime is permissible. *S. v. Case,* 93 N. C., 546; *S. v. Dickens,* 189 N. C., 327, 127 S. E., 256; *S. v. Lawrence,* 196 N. C., 562, 146 S. E., 395; *S. v. Payne,* 213 N. C., 719, 197 S. E., 579.

It is contended that evidence as to what transpired three or four years ago is incompetent as too remote. The remoteness goes to the weight, and not to the competency of the testimony.

It is also contended that if some of this testimony be competent at all it is only corroborative, and should have been limited to that purpose at the time of its admission, or at least in the charge, which the court failed to do. Defendant made no request to so limit the testimony.

"When testimony is admitted, not as substantive evidence, but in corroboration or contradiction, and that fact is stated by the court when it is admitted, it will not be ground for exception that the judge fails in his charge to again instruct the jury specifically upon the nature of such evidence, unless his attention is called to the matter by a prayer for instruction; nor will it be ground for exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks, at the time of admission, that its purpose shall be restricted." Rule 21 of Rules of Practice in the Supreme Court, 213 N. C., 821; *S. v. Steele,* 190 N. C., 506, 130 S. E., 308; *S. v. McKeithan,* 203 N. C., 494, 166 S. E., 336; *S. v. Tuttle,* 207 N. C., 649, 178 S. E., 76.

5. Exceptions to the admission of testimony of a physician, but not psychiatrist or expert in mental diseases, relating his opinion of mental condition of defendant formed after short conversation and observation, are untenable.

"Anyone who has observed another, or conversed with him, or had dealings with him, and a reasonable opportunity, based thereon, of forming an opinion, satisfactory to himself, as to the mental condition of such person, is permitted to give his opinion in evidence upon the issue of mental capacity, although the witness be not a psychiatrist or expert in mental disorders." *White v. Hines,* 182 N. C., 275, 109 S. E., 31; *S. v. Houser,* 202 N. C., 738, 164 S. E., 114; *S. v. Jones,* 203 N. C., 374, 166 S. E., 163; *S. v. Keaton,* 205 N. C., 607, 171 S. E., 179; *S. v. Stefanoff,* 206 N. C., 443, 174 S. E., 411.

"One not an expert may give an opinion, founded upon observation, that a person is sane or insane." *Whitaker v. Hamilton,* 126 N. C., 465, 35 S. E., 815.

6. Mental incapacity of defendant to form an intent to kill brought about by drunkenness is pleaded as a defense to the charge of murder in the first degree. Exception is taken to the charge of the court in that respect. It is sufficient to say that, by comparison, the charge given is in substantially the language of this Court in numerous cases, and fully presented the question to the jury. *S. v. Murphy,* 157 N. C., 614, 72 S. E., 1075; *S. v. Shelton,* 164 N. C., 513, 79 S. E., 883; *S. v. Foster,* 172 N. C., 960, 90 S. E., 785; *S. v. Ross,* 193 N. C., 25, 136 S. E., 193; *S. v. Edwards,* 211 N. C., 555, 191 S. E., 1.

Nor do we find error in the refusal to give requested instructions relating to the same subject.

7. Defendant earnestly contends that there is error in the refusal of the court to allow his motion for judgment as of nonsuit on the first degree murder charge in compliance with the statute. C. S., 4643. The motion challenges the sufficiency of the evidence to show premeditation and deliberation beyond a reasonable doubt. *S. v. Bittings,* 206 N. C., 798, 175 S. E., 299, and cases cited; *S. v. Bowser, ante,* 249.

It is appropriate, therefore, to recur to principles applicable to the case.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. C. S., 4200; *S. v. Payne, supra,* and cases cited; *S. v. Bowser, ante,* 249.

The intentional killing of a human being with a deadly weapon implies malice and, if nothing else appears, constitutes murder in the second degree. *S. v. Payne, supra,* and cases cited; *S. v. Bowser, supra.*

"The additional elements of premeditation and deliberation, necessary to constitute murder in the first degree, are not presumed from a killing with a deadly weapon. They must be established beyond a reasonable doubt, and found by the jury, before a verdict of murder in the first degree can be rendered against the prisoner." *S. v. Miller,* 197 N. C., 445, 149 S. E., 590; *S. v. Payne, supra; S. v. Bowser, supra.*

"Premeditation means 'thought beforehand' for some length of time, however short." *S. v. Benson,* 183 N. C., 795, 111 S. E., 869, at 871; *S. v. McClure,* 166 N. C., 321, 81 S. E., 458; *S. v. Payne, supra,* and cases cited.

"Deliberation means that the act is done in cool state of blood. It does not mean brooding over it or reflecting upon it for a week, a day or an hour, or any other appreciable length of time, but it means an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose, and not under the influence of a violent passion, suddenly aroused by some lawful or just cause or legal provocation." *S. v. Benson, supra; S. v. Payne, supra.*

"In determining the question of premeditation and deliberation it is proper for the jury to take into consideration the conduct of the defendant, before and after, as well as at the time of, the homicide, and all attending circumstances." *Stacy, C. J.,* in *S. v. Evans,* 198 N. C., 82, 150 S. E., 678; *S. v. Bowser, supra.*

Evidence of threats are admissible and may be offered as tending to show premeditation and deliberation, and previous express malice, which are necessary to convict of murder in the first degree. *S. v. Payne, supra; S. v. Bowser, supra.*

Applying these principles, the evidence in the instant case is abundantly sufficient to be submitted to the jury on the first degree murder charge.

Motion of defendant made in this Court to set aside the verdict and judgment upon the ground that the jury was permitted and did attend a moving picture show depicting a murder mystery is denied.

In the judgment below there is

No error.